# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 2006 Session

## FORREST L. WHALEY and MARGARET ANN WHALEY v. JIM ANN PERKINS, ET AL.

**Appeal By Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. 95604-4 T.D. & 94890-8 T.D.    Rita L Stotts, Judge**

---

**No. W2004-02058-SC-R11-CV - Filed on July 14, 2006**

---

The Plaintiffs purchased from two of the Defendants a home located on a two-acre parcel of land that had been part of a larger parcel. The Plaintiffs later discovered that the two-acre parcel had been illegally subdivided from the larger parcel, and they filed suit alleging breach of contract, intentional misrepresentation, negligence per se, and breach of warranty of title. In addition to other damages, the Plaintiffs sought damages for emotional distress. A jury returned a verdict in favor of the Plaintiffs and awarded $170,000 as compensatory damages and an additional $5,000 as punitive damages. The Court of Appeals held, in pertinent part, that the Plaintiffs' claim for damages for emotional distress was barred by the one-year statute of limitations applicable to personal injury actions. We hold that the one-year personal injury statute of limitations does not apply to this case, and we therefore reverse that part of the intermediate court's judgment. We affirm all other aspects of the intermediate court's judgment and remand to the trial court for further proceedings.

**Tenn. R. App. 11 Appeal By Permission;**
**Judgment of the Court of Appeals Affirmed in Part, Reversed in Part, and Remanded.**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which William M. Barker, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, AND CORNELIA A. CLARK, JJ., joined.

Richard M. Carter, Paul H. Morris, and Brian K. Kelsey, Memphis, Tennessee, for Appellants, Forrest L. Whaley and Margaret Ann Whaley.

John D. Horne, Memphis, Tennessee, for the Appellees, Jim Ann Perkins, Albert Lewis Beshires, and Terry Lynn Beshires.

## OPINION

### I. Facts & Procedural History

Mrs. Jim Ann Perkins owned a seventy-five-acre farm in Shelby County. In 1985, Mrs. Perkins agreed to give her daughter and son-in-law, Terry and Albert Beshires, two acres of the larger parcel so that the Beshireses could build a home on the property. In July 1985, prior to Mrs. Perkins deeding two acres to the Beshireses, the Beshireses obtained a sidewalk permit to construct a driveway on the larger parcel. In August 1985, they also obtained approval to install a septic system. Shortly thereafter, Mrs. Beshires went to the Memphis and Shelby County Office of Construction Code Enforcement to obtain a building permit. Mrs. Beshires called her mother, Mrs. Perkins, and obtained her permission to sign Mrs. Perkins' name to the building permit. The building permit was issued listing Mrs. Perkins as "owner" and indicating that "owner" would be the general contractor for the construction of the residence. In addition, the building permit indicated that the residence would be built upon the seventy-five-acre parcel which belonged to Mrs. Perkins.

On October 29, 1985, approximately two months after Mrs. Beshires obtained the building permit, Mrs. Perkins executed a warranty deed prepared by Earl Daley, a Memphis attorney. The deed transferred two acres of the seventy-five-acre parcel to the Beshireses. On October 30, the deed was recorded in the Office of the Register of Deeds for Shelby County. Mr. Daley subsequently contacted Mrs. Perkins and informed her that the Beshireses would need two additional acres to make the transfer legal, because under Shelby County's subdivision regulations a larger parcel of property could not be subdivided into parcels smaller than four acres (with fifty feet of frontage) without first proceeding through the subdivision approval process. Mrs. Perkins directed Mr. Daley to prepare papers to transfer an additional two acres to the Beshireses; on December 12, 1985, Perkins executed a second warranty deed conveying a second two-acre parcel to the Beshireses. That deed was recorded in the Register's office on March 19, 1986.

After the second transfer, the Beshireses owned four contiguous acres and had fifty feet of road frontage, therefore avoiding the necessity of going through the subdivision approval process. The Beshireses completed construction of the home and lived in it until 1988.[1]

In early 1988, the Beshireses decided to move and listed their residence for sale with a realtor. The property was re-listed on April 13, 1988. In that listing agreement, the Beshireses indicated that the residence could be purchased with either two acres or four acres. Shortly thereafter, the plaintiffs, Forrest and Margaret Ann Whaley, were shown the property. The Whaleys were told that the house and two acres could be purchased for $136,000 or that the house and four acres could be purchased for $157,000. On April 18, 1988, the Whaleys submitted an offer to purchase the residence and two acres for $125,000. The Beshireses accepted the Whaleys' offer on April 21, 1988. The transaction was closed on November 27, 1988. At no time did the Beshireses or anyone else inform the Whaleys that the two-acre parcel would not comply with Shelby County's subdivision regulations, nor did the Beshireses or anyone else inform the Whaleys that the septic lines for the house extended beyond their two-acre parcel onto the other two-acre parcel.

---

[1]Contrary to the application for the building permit, Mrs. Perkins was not involved in the construction of the Beshireses residence and did not act as general contractor for the project.

Mrs. Perkins and Terry Beshires both testified that they had a verbal agreement about what would occur in the event the Beshireses sold the property. If the Beshireses sold the residence and only two acres of the property, the Beshireses agreed to return the second two-acre parcel to Mrs. Perkins; if the Beshireses sold the residence and the entire four-acre parcel, they agreed to pay Mrs. Perkins for the second two-acre parcel from the sale proceeds. Pursuant to that verbal agreement, the Beshireses transferred the second two-acre parcel back to Mrs. Perkins via a quitclaim deed in July 1992.

In 1995, Perkins sold her farm property (now approximately seventy-three acres, including the two acres returned to her by the Beshireses in 1992) to a third party for development of a subdivision. On July 3, 1995, after a subdivision application for the farm had been filed, the Memphis and Shelby County Office of Planning and Development ("OPD") sent the Whaleys a notice of hearing regarding the approval of the subdivision. On July 13, 1995, the OPD filed a staff report which concluded that "the Whaley property . . . appears to have been created in violation of the subdivision regulations." The Whaleys received a copy of the OPD report. They testified that the report gave them their first knowledge that the property had been illegally subdivided.

Mrs. Whaley testified that she contacted Mrs. Perkins about the problem and that Mrs. Perkins advised her that there was nothing she could do to assist the Whaleys. The Whaleys testified that the illegal status of their property caused them significant emotional distress, including depression, worry, and anxiety. They also testified that they had planned to move to Alabama following Mr. Whaley's planned retirement so they would be closer to Mr. Whaley's mother and to their children and grandchildren. Due to the uncertainty caused by the illegal status of their property, and the resulting loss in the value of the property, Mr. Whaley postponed his retirement, and the couple postponed their move to Alabama.

On May 26, 1998, the Whaleys filed a complaint against Mrs. Perkins, the Beshireses, and the Whaleys' title insurance carrier, alleging breach of contract, misrepresentation, and breach of warranty of title. The Whaleys filed a second complaint for damages against the various realtors involved in the Beshireses' sale of the property to the Whaleys. They subsequently filed an amended complaint adding as a defendant the closing attorney for the transaction.

In October 2000, the Whaleys nonsuited their action against the closing attorney. In addition, in February 2002, the trial court dismissed the complaint against the title insurance company, and that ruling was subsequently affirmed on appeal.

The case against Mrs. Perkins, the Beshireses, and the various real estate agents went to trial in April 2004. At the close of the plaintiffs' proof, Mrs. Perkins moved for a directed verdict, arguing that she had played no part in the sale of the property, that she had made no representations of any kind to the Whaleys, and that the Whaleys' claim for damages for emotional distress was barred by the one-year statute of limitations governing personal injury actions. The trial court took the motion under advisement. At the close of all the proof, Mrs. Perkins renewed her motion for a directed verdict. The trial court denied the motion, and the case was submitted to the jury.

The jury returned a verdict in favor of the Plaintiffs. The jury found Mrs. Perkins, the Beshireses, the real estate agents, and the closing attorney to be at fault and attributed fault as follows: Terry Beshires was found to be forty percent at fault; Mrs. Perkins was found to be thirty percent at fault; Albert Beshires was found to be twenty percent at fault; the real estate agents were collectively found to be nine percent at fault; and the closing attorney, who previously had been dismissed as a party, was found to be one percent at fault. The jury awarded compensatory damages to the Whaleys in the amount of $170,000. In a special interrogatory to the jury, the jury expressly found that the actions of Mrs. Perkins, Albert Beshires, and Terry Beshires constituted "intentional misrepresentation." Following a punitive damages hearing, the jury ordered Mrs. Perkins to pay $2,000 in punitive damages, Terry Beshires to also pay $2,000 in punitive damages, and Albert Beshires to pay $1,000 in punitive damages.

Following the trial court's denial of the defendants' post-trial motions,[2] Mrs. Perkins and the Beshireses filed a timely notice of appeal. The other defendants did not appeal. Mrs. Perkins and the Beshireses raised numerous grounds in their appeal. The Court of Appeals held that the Whaleys' claim for damages for emotional distress was barred by the one-year statute of limitations applicable to personal injury actions. The intermediate appellate court also held that the trial court erred in failing to direct a verdict in favor of Mrs. Perkins on the ground that there was no material evidence to support the jury's verdict that she was liable for intentional misrepresentation. The Court of Appeals further held that the trial court erred in instructing the jury on the appropriate measure of damages and in failing to grant a directed verdict or judgment notwithstanding the verdict[3] on the issue of negligence per se. The intermediate court therefore vacated the trial court's judgment on the jury's verdict and remanded the case with instructions to enter a directed verdict in favor of Mrs. Perkins and to order a new trial as to the claims against the Beshireses.

## II. Statute of Limitations

Although the Whaleys raise other issues, discussed below, the primary issue before this Court concerns the appropriate statute of limitations.

## A. Standard of Review

Because it is a question of law, the scope of review on this issue is de novo with no presumption of correctness. Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

## B. Analysis

---

[2] Mrs. Perkins and the Beshireses filed separate motions for judgment nothwithstanding the verdict or, in the alternative, for new trial or remittitur.

[3]A judgment not withstanding the verdict is a post-trial motion for a directed verdict and is subject to the provisions of Tennessee Rule of Civil Procedure 50.

The Court of Appeals held that the Whaleys could not seek damages for emotional distress because their claim for such damages was barred by the one-year statute of limitations applicable to personal injury actions. Tenn. Code Ann. § 28-3-104(a)(1) (2000). The Whaleys contend that the Court of Appeals erred in applying the personal injury statute of limitations to the pending case.

The "applicable statute of limitations in a particular cause will be determined according to the gravamen of the complaint." Gunter v. Lab. Corp. of Am., 121 S.W.3d 636, 638 (Tenn. 2003) (quoting Vance v. Schulder, 547 S.W.2d 927, 931 (Tenn. 1977)). The Whaleys assert that the gravamen of their complaint is a property tort claim and that the three-year statute of limitations applicable to property tort actions therefore applies. Tenn. Code Ann. § 28-3-105(1) (2000). They contend that their claim for damages for emotional distress is not a separate cause of action but is instead only an element of damages arising from their property tort claim.

We begin by pointing out that no issue is presented as to the availability of damages for emotional distress in a property tort action. The defendants merely argue that the plaintiffs' claim for such damages is barred by the one-year personal injury statute of limitations. We note, however, that:

> Subject to some exceptions, generally, under ordinary circumstances, there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his or her property. *Where, however, the act occasioning the injury to the property is inspired by fraud, malice, or like motives, mental suffering is a proper element of damage*.

25 C.J.S. Damages § 99 (2002) (footnotes omitted) (emphasis added). See also Andrew L. Merritt, Damages for Emotional Distress in Fraud Litigation: Dignitary Torts in a Commercial Society, 42 Vand. L. Rev. 1 (1989); Steven J. Gaynor, Annotation, Fraud Actions: Right to Recover for Mental or Emotional Injuries, 11 A.L.R. 5th 88 (1993). Because the Plaintiffs' complaint alleged and the jury found that the defendants made intentional misrepresentations concerning the property, we proceed under the assumption that such damages are available under the facts of this case.

In Swauger v. Haury & Smith Contractors, Inc., 512 S.W.2d 261, 262 (Tenn. 1974), this Court analyzed the question of whether the one-year personal injury or the three-year injury to property statute of limitations applied in a case in which faulty septic tanks caused property damage and "inconvenience and loss of enjoyment." The defendant argued that, because the complaint sought damages for "inconvenience and loss of enjoyment," the action was one for personal injuries and that the one-year personal injury statute of limitations therefore applied. Id. This Court rejected the defendant's argument, concluding that the gravamen of the complaint was "chiefly concerned with injuries done to property." Id. at 263. This Court reasoned that the "personal" elements of damage, "inconvenience and a loss of enjoyment of their home for a period of two years," were "damages aris[ing] wholly as a result of the injury to plaintiffs' property and not as a result of anything done personally to them." Id. This Court therefore held that the trial court erred in dismissing the complaint based upon the one-year personal injury statute of limitations. Id.

Our analysis in Swauger answers the statute of limitations issue in the pending case. The gravamen of the Whaleys' complaint is that the defendants' actions injured their property, and the damages they sought for emotional distress were "damages aris[ing] wholly as a result of the injury to plaintiffs' property and not as a result of anything personally done to them." In other words, the Whaleys' "claim" for damages for emotional distress was merely an element of their overall claim for damages for the injury to their property and not a stand-alone cause of action. Consequently, the three-year property tort statute of limitations applies, and the intermediate court erred in holding that the one-year personal injury statute of limitations barred the Whaleys' claim for damages for emotional distress.

## III. Mrs. Perkins' Liability

In their second, third, and fifth issues, the Whaleys assert, in summary, that the Court of Appeals erred in vacating the judgment against Mrs. Perkins. The Whaleys argue that the intermediate court improperly applied the standard of review and thereby erred in finding that there is no material evidence to support the jury's verdict against Mrs. Perkins. They also argue that the defendants, including Mrs. Perkins, are jointly and severally liable to the plaintiffs.

### A. Standard of Review

The applicable standard of review is set out in Tennessee Rule of Appellate Procedure 13(d), which provides, "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." Discussing that standard of review, we have stated:

> When addressing whether there is material evidence to support a verdict, an appellate court shall: (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence. Crabtree Masonry Co. v. C & R Constr., Inc., 575 S.W.2d 4, 5 (Tenn. 1978); Black v. Quinn, 646 S.W.2d 437, 439-40 (Tenn. App. 1982). Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies. If the record contains "any material evidence to support the verdict, [the jury's findings] must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury." Crabtree Masonry Co., 575 S.W.2d at 5.

Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 704-05 (Tenn. 2000).

Based upon our independent review of the evidence, we conclude that the Court of Appeals did not err in its application of the standard of review, nor did the intermediate court err in finding that there is no material evidence to support the jury's verdict finding that Mrs. Perkins had made

an intentional misrepresentation to the Whaleys. The evidence is virtually undisputed that Mrs. Perkins made no representations of *any* kind to the Whaleys, because she had no contact with the Whaleys at the time the Beshireses sold the property to the Whaleys. While the Whaleys assert that Mrs. Perkins' initial involvement in the Beshireses' construction of the house and her verbal agreement with Mrs. Beshires (concerning either the return of two acres or payment for two acres upon the Beshireses' sale of the property) implicated her in the Beshireses' intentional misrepresentations to the Whaleys, we reject that argument. There simply is no evidence that Mrs. Perkins had any role in the Beshireses' sale of the property to the Whaleys. We therefore must affirm the Court of Appeals' holding that there is no material evidence supporting the jury's finding that Mrs. Perkins made any intentional misrepresentations to the Whaleys.[4]

## IV. Negligence Per Se

In their fourth issue, the Whaleys argue that the Court of Appeals incorrectly held that the trial court erred in instructing the jury on negligence per se and that the Court of Appeals incorrectly found that the error "more probably than not" affected the jury's verdict.

### A. Standard of Review

This issue is a question of law which we review de novo with no presumption of correctness. Ridings, 914 S.W.2d at 80.

### B. Analysis

The Whaleys argue that the Defendants' violation of the Shelby County subdivision regulations constituted negligence per se, for which the Defendants are liable.[5] The intermediate court rejected that argument, citing Rains v. Bend of the River, 124 S.W.3d 580 (Tenn. Ct. App. 2003), for the proposition that not every violation of a statute triggers the negligence per se doctrine.

We previously have summarized the doctrine of negligence per se as follows:

---

[4] Because we find no material evidence to support the jury's verdict against Mrs. Perkins, the Plaintiffs' issue concerning joint and several liability is pretermitted.

[5] The Plaintiffs allege that the Defendants violated Section 105 of the Shelby County Subdivision Regulations, as well as Sections 23-92 and 23-93 of the Shelby County Code and Tennessee Code Annotated section 13-3-410. We conclude that Sections 23-92 and 23-93 of the Shelby County Code were not expressly violated by the Defendants' actions and that Tennessee Code Annotated section 13-3-410, is inapplicable. The pertinent regulation for purposes of our analysis is Section 105 of the Subdivision Regulations, which provides, in summary, that no land shall be subdivided in the City of Memphis or the unincorporated part of Shelby County without approval of the preliminary plan and final plat, and without the filing of the approved final plat in the Register's office. The regulation also states that "No building permit. . .shall be issued for any parcel or plat of land which was created by subdivision after the effective date of, and which does not conform with, the provisions of these subdivision regulations." The regulation exempts a parcel which has four or more acres (but less than twenty) and which has a minimum of fifty feet of frontage on a public road.

The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se. "When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate." Prosser and Keeton on Torts § 36, p. 220 (5th ed. 1984). In order to establish negligence per se, it must be shown that the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public. It must also be established that the injured party was within the class of persons that the statute was meant to protect.

Cook By and Through Uithoven v. Spinnaker's of Rivergate, Inc., 878 S.W.2d 934, 937 (Tenn. 1994) (citations omitted). While the discussion in Cook refers to violation of a statute, we note that other cases include violations of ordinances as a possible ground for application of the negligence per se doctrine. See, e.g., Harden v. Danek Med., Inc., 985 S.W.2d 449, 452 (Tenn. Ct. App. 1998) (stating, in pertinent part, "In order to recover under the theory of negligence per se, a party must establish three elements. First, the defendant must have violated a statute *or ordinance* that imposes a duty or prohibition for the benefit of a person or the public.") (emphasis added).

In discussing the doctrine of negligence per se, the Court of Appeals has noted that the doctrine "is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute. Not every statutory violation amounts to negligence per se." Rains, 124 S.W.3d at 590 (citations omitted). As the intermediate court went on to say in Rains:

The fact that the General Assembly has enacted a statute defining criminal conduct does not necessarily mean that the courts must adopt it as a standard of civil liability. Decisions regarding the proper civil standard of conduct rest with the courts. Thus, the courts must ultimately decide whether they will adopt a statutory standard to define the standard of conduct of reasonable persons in specific circumstances.

The courts consider a number of factors to determine whether the violation of a statute should trigger the negligence per se doctrine. The two threshold questions in every negligence per se case are whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type that the statute was designed to prevent.

Id. at 590-91 (citations omitted).

Considering all of the foregoing principles, we conclude that the Defendants' violation of the Shelby County subdivision regulation does not warrant the application of the doctrine of negligence per se. We first note that the unstated premise of the Plaintiffs' argument is that because the Beshireses' property was illegally subdivided, the Beshireses *automatically* are liable under the doctrine of negligence per se. As stated above, however, "[n]ot every statutory violation amounts to negligence per se." Id. at 590.

In considering the negligence per se issue below, the Court of Appeals concluded that the Whaleys' injury is not the type of injury which the subdivision regulation was designed to prevent. We agree with the Court of Appeals' conclusion and adopt the following analysis from the intermediate court's opinion:

> these subdivision regulations were enacted largely for reasons related to quality of life, among them, assuring adequate public facilities for residents, minimizing pollution, providing for orderly layout and use of land, protecting the value of land, preventing overcrowding, and assuring effective traffic circulation. The harm alleged by the Whaleys is not a harm the regulations were designed to prevent, but rather, it is an accidental consequence of a [regulation] enacted to prevent *other* harms to the community and its residents that could be caused by the unregulated subdivision of land.

Based upon the foregoing, we conclude that the trial court erred in submitting the negligence per se issue to the jury, and we affirm the intermediate court's judgment as it pertains to this issue. Given our holdings that there is no material evidence to support the jury's verdict against Mrs. Perkins and that the trial court erred in submitting the negligence per se claim to the jury, we conclude that those two errors, especially when considered together, more probably than not affected the jury's verdict. See Tenn. R. App. P. 36(b). We therefore vacate the trial court's judgment and remand to the trial court with instructions to direct a verdict in favor of Mrs. Perkins and to hold a new trial as to the Whaleys' claims against Mr. and Mrs. Beshires.

## V. Conclusion

For the reasons stated above, we hold that the Whaleys' claim for damages for emotional distress is not barred by the one-year personal injury statute of limitations, and we therefore reverse that part of the Court of Appeals' judgment. We also hold, however, that the Court of Appeals did not err in vacating the trial court's judgment as it pertains to the Whaleys' claims against Mrs. Perkins, and we therefore affirm that part of the intermediate court's judgment. We likewise affirm the intermediate court's judgment as it pertains to the negligence per se issue.

The costs of this appeal are taxed two-thirds to Terry Lynn Beshires and Albert Lewis Beshires and their surety, and one-third to Forrest L. Whaley and Margaret Ann Whaley and their surety, for which execution may issue, if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE