Norma Jean CLEMONS, Successor to Harold Clemons, and Larry Douglas Clemons d/b/a Clemons Wrecker Service

v.

Johnny Steve COWAN.

Court of Appeals of Tennessee,
Eastern Section, at Nashville.

Assigned on Briefs Nov. 16, 2009.

Feb. 4, 2010.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 25, 2010.

---

Henry Clay Barry, Lebanon, Tennessee, for the appellant/defendant, Johnny Steve Cowan.

Michael P. McGovern, Knoxville, Tennessee, for the appellees/plaintiffs, Norma Jean Clemons and Larry Douglas Clemons.

## MEMORANDUM OPINION [1]

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

This is a libel case. The plaintiffs owned and operated a business that performed services for the county sheriff's department for twenty years. In the context of an election for the office of sheriff, the defendant challenger published several advertisements in the local newspaper that insinuated that the incumbent sheriff allowed the plaintiffs to charge the county inflated fees for their services. The defendant did not win the election, but nevertheless, the plaintiffs' services contract with the county was cancelled. The plaintiffs sued the defendant for libel and tortious interference with business relationship. Prior to the trial, one of the plaintiffs died and his wife was allowed to substitute as a party. The matter proceeded to a jury trial, and the jury ultimately awarded compensatory and punitive damages. After the defendant's motion for a new trial was denied, the defendant appeals. We affirm.

### FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee Larry Douglas Clemons owned and operated a towing service and automotive repair business, Clemons Wrecker Service ("Clemons Wrecker"), with his father, Harold Clemons, in Carthage, Tennessee. For at least twenty years, Clemons Wrecker performed service and maintenance work on the patrol vehicles used by the Smith County Sheriff's Department.

In 2006, an election for the office of Smith County Sheriff was held. The incumbent, Sheriff Johnny Bane, had several challengers, including Defendant/Appellee Johnny Steve Cowan ("Cowan"). As part of his campaign, Cowan authored and published a series of advertisements which appeared in the local newspaper, the Carthage Courier, from February to June in 2006.

In the advertisements, Cowan sought to highlight the purported wasteful spending of the incumbent's administration and to persuade voters that, if elected, Cowan would stop the wasteful spending. On February 16, 2006, Cowan ran an ad that said:

> The citizens of Smith County are already paying for expenses that are inflated and unnecessary. One repair for one county patrol car was paid in the amount of $1,214.00. I have an estimate from a mechanic for this one repair, cutting the costs down to $548.00. This is a difference of $666.00. On this one particular invoice, for one patrol car, you, the citizens, paid $9.07 per quart for synthetic oil and you were billed for 6 quarts. This money belongs to the citizens of Smith County. This is your money!

The next month, in the March 16, 2006 issue of the Carthage Courier, Cowan ran an ad saying:

> The Sheriff's Department must operate and be accountable for the funds that a county this size has available. We must stop paying for "price gouging" for the repair of our patrol cars. How many of

---

1. **Rule 10.  Memorandum Opinion**
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case. TENN. CT.APP. R. 10.

you would pay over $9.00 for one quart of oil for your car?

In the April 13, 2006 issue of the Carthage Courier, Cowan published the following: "In December of 2005, we [the taxpayers] paid Clemons Wrecker Service $85.77 for a 5 quart synthetic oil change. The same oil change I can get done for $25.00 less at a local facility." Apparently, some of Cowan's ads incorporated copies of invoices from Clemons Wrecker.[2]

Following publication of Cowan's advertisements, an attorney representing Larry Clemons and Clemons Wrecker sent Cowan a letter pursuant to Tennessee Code Annotated § 29–24–103.[3] In the letter, the attorney informed Cowan that Clemons considered the ads to be libelous because they falsely implied that Clemons was improperly inflating maintenance costs. The attorney demanded that Cowan "publish a full and fair correction, apology, or retraction in the Carthage Courier in as conspicuous a place as the original advertisements containing the libelous statements." Cowan received the letter, but did not publish either a correction or a retraction.

On May 31, 2006, Larry Clemons and Harold Clemons filed the instant lawsuit against Cowan, seeking compensatory damages for libel and tortious interference with a business relationship. The complaint sought punitive damages for the libel. Cowan's answer admitted publication of the advertisements, but denied all other allegations. Discovery and discovery disputes ensued.

In August 2006, while the lawsuit was pending, the vote on the Sheriff's election occurred. Cowan did not win the election. Incumbent Sheriff Johnny Bane was defeated by another challenger, who then decided not to hire Clemons Wrecker to service the County's patrol vehicles.

The case was set for jury trial in July 2008. About four months prior to trial, Plaintiff Harold Clemons suffered a heart attack and passed away. After his death, Plaintiff Larry Clemons filed a suggestion of death and a motion for leave to file an amended and supplemental complaint.

2. The joint statement of evidence contained in the record states that some of the advertisements included copies of invoices, but it does not specify which ads did so. The exhibits in the record do not indicate which advertisements included copies of the invoices.

3. The statute provides:
(a) Before any civil action is brought for publication, in a newspaper or periodical, of a libel, the plaintiff shall, at least five (5) days before instituting such action, serve notice in writing on the defendant, specifying the article and the statements therein which the plaintiff alleges to be false and defamatory.
(b)(1) If it appears upon the trial that the article was published in good faith, that its falsity was due to an honest mistake of the facts, and that there were reasonable grounds for believing that the statements in the article were true, and that within (10) days after the service of such notice, or in the next regular edition of such newspaper or periodical, if more than ten (10) days from date of notice, a full and fair correction, apology, or retraction was published in the same editions, and in the case of a daily newspaper, in all editions of the day of such publication, or corresponding issues of the newspaper or periodical in which the article appeared; and in the case of newspapers on the front page thereof, and in the case of other periodicals in as conspicuous a place as that of the original defamatory article, and in either case, in as conspicuous a plat or type as was the original article, then the plaintiff shall recover only actual, and not punitive, damages.
(2) The exemption from punitive damages shall not apply to any article about or affecting a candidate for political office, published within ten (10) days before any election for the office for which the person is a candidate.
T.C.A. § 29–24–103 (2000).

The motion did not seek substitution, but rather stated that Larry Clemons would prosecute the action on his own. Before the trial court could rule on Larry Clemons's motion, the surviving spouse of Harold Clemons, Norma Jean Clemons, filed a motion for substitution, requesting "that she be substituted as plaintiff as successor to the claim of plaintiff Harold Clemons."

With both motions pending, the trial court conducted a pre-trial conference three days prior to the trial date. Without any objection from Cowan, the trial court granted Norma Jean Clemons's motion for substitution. The trial court noted that Cowan was not represented by counsel and strongly cautioned him against proceeding to trial *pro se*, even *sua sponte* offering to continue the trial to allow him to hire a lawyer. Cowan, however, insisted on proceeding *pro se*.

On July 21, 2008, the jury trial was held as scheduled. In the course of the trial, the jury heard testimony from, *inter alia*, Larry Clemons, former Sheriff Johnny Bane, Norma Jean Clemons, and Cowan.[4] Fourteen exhibits, including copies of the advertisements at issue, were entered into evidence.

At the outset of the trial, Larry Clemons testified that the publication of the advertisements caused him extreme embarrassment. Prior to publication of the ads, he said, Clemons Wrecker had had a good reputation in Smith County. He insisted that the rates he charged the County for servicing the Sheriff's Department vehicles were fair and reasonable. In particular, he noted that he charged the County the

wholesaler's "suggested retail price" for the motor oil that he used.

Former Sheriff Johnny Bane testified that he had always been satisfied with the services provided by Clemons Wrecker and that he did not think that Clemons Wrecker had overcharged the County. When the advertisements were published, Bane testified, he did a price comparison by taking his personal patrol car to several other automobile service shops in the area. From Sheriff Bane's comparison, Clemons Wrecker's prices were comparable to other local mechanic shops.

Norma Jean Clemons testified about statements that her deceased husband, Harold Clemons, made to her before his death. She said that Cowan's advertisements had caused Harold Clemons to suffer stress and anxiety about the continued viability of Clemons Wrecker. She claimed that Harold Clemons's heart attack was caused by the stress resulting from Cowan's campaign ads.[5]

Cowan testified on his own behalf. He asserted that the information in his campaign advertisements came from the County Mayor's Office. However, Cowan admitted that, in making the calculations published in the ads, he made an error concerning the number of quarts of oil. He also admitted that he never compared Clemons Wrecker's prices with other service stations, as former Sheriff Bane had done, and that he had no evidence to support the claim in the ads that oil changes could be performed for $25 less than the price Clemons Wrecker charged. Cowan explained that his ads were not directed at Clemons Wrecker, but rather were direct-

---

4. The record does not include a transcript of the testimony, but includes a statement of the evidence.

5. Cowan, representing himself, did not object to Mrs. Clemons's testimony about statements

made by her deceased husband or to her opinion testimony about the cause of her husband's heart attack. The Plaintiffs submitted no medical expert proof on Harold Clemons's medical condition or the cause of his death.

ed at former Sheriff Bane for his alleged failure to properly oversee the expenditure of taxpayer funds.

At the close of proof, the trial court charged the jury. The jury was provided the following jury verdict form:

1. Have the plaintiffs proved by a preponderance of the evidence all the necessary elements of libel?

Yes _____ No _____

2. Have the plaintiffs proved by a preponderance of the evidence that the defendant is guilty of intentional interference with the business of the plaintiffs

Yes _____ No _____

3. What amount of damages, if any, are the plaintiffs entitled to?

$ _____

4. Are the plaintiffs entitled to punitive damages?

Yes _____ No _____

When the jury returned the verdict form, it had marked "yes" in response to questions one and two, finding that "the plaintiffs" had proved by a preponderance of the evidence all the necessary elements of both claims. However, in response to question three, the jury had entered a zero, apparently finding that "the plaintiffs" were not entitled to compensatory damages. In response to question four, the jury had marked "yes," finding that "the plaintiffs" were entitled to punitive damages.

Upon receiving the completed jury verdict form, the trial court instructed the jury that there could be no award of punitive damages without an award of compensatory damages. The jury was then sent back to continue its deliberations. Neither party objected to the trial court's additional instruction, suggested a different instruction, or made a motion for a mistrial. When the jury returned, question three on the jury verdict form was filled out with a verdict of $10,000 in compensatory damages.

The next day, the trial was resumed for a hearing on punitive damages. After further proof and argument, the jury returned a verdict of $15,000 in punitive damages. Subsequently, the trial court entered a written judgment stating that "the plaintiffs" had proved all the necessary elements of both claims and awarding a total of $25,000 to Norma Jean Clemons and Larry Clemons.

After entry of the judgment against him, Cowan retained an attorney. Cowan's attorney then made a motion on his behalf for a new trial on four grounds. First, Cowan argued that a claim for libel does not survive the death of a party, and thus that the trial court erred in allowing Norma Jean Clemons to be substituted for Harold Clemons, "render[ing] the judgment illegal and contrary to law." Second, Cowan asserted that, after the jury initially returned a verdict for punitive damages with no compensatory damages, the trial court erred by failing to instruct the jury as to nominal damages. Third, Cowan asserted that the trial court erred in granting a motion in limine to exclude a particular magazine from evidence prior to trial. Finally, Cowan asserted that the trial court erred in granting judgment to Norma Jean Clemons and Larry Clemons because the statements in the ads constituted protected political speech.

Cowan's motion for a new trial was denied. Cowan now appeals.

ISSUES ON APPEAL AND STANDARD OF REVIEW

▉ Slightly rephrased, Cowan raises the following issues for review:

1) Whether Harold Clemons's death prior to trial ended any claim that he may have had for libel;

2) Whether the trial court erred in allowing Norma Jean Clemons, surviving spouse of Harold Clemons, to be substituted as party of record for Harold Clemons;

3) Whether Cowan's campaign advertisements were political speech, and, if so, does the evidence support the finding that Cowan knowingly printed an intentionally incorrect statement as to the amount billed to Smith County for the services provided, and without intent, does Cowan's action qualify as tortious conduct in Tennessee;

4) Whether there was sufficient evidence of intentional misconduct to justify punitive damages;

5) Whether a joint judgment for two plaintiffs can be sustained if one of the plaintiff's claims ended upon his death prior to trial; and

6) Whether a trial court should *sua sponte* dismiss a case when the jury returns a verdict of liability with no damages, or alternatively, whether the trial court should instruct the jury as to nominal damages under those circumstances.

When reviewing a jury's findings of fact in a civil dispute, this Court will set aside those findings only "if there is no material evidence to support the verdict." *Rutherford v. S. Coll. of Optometry*, No. W2008–02268–COA–R3–CV, 2009 WL 5064972, at *4 (Tenn.Ct.App. Dec. 28, 2009) (citing Tenn. R.App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn.2006)). "Appellate courts shall neither reweigh the evidence nor decide where the preponderance

of the evidence lies. If the record contains 'any material evidence to support the verdict, [the jury's findings] must be affirmed; . . . .'" *Id.* (quoting *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704–05 (Tenn.2000)) (alteration in *Barnes*).

■ In contrast, the trial court's conclusions of law are subjected to a less deferential standard of review. *Id.* This Court reviews the trial court's conclusions of law *de novo,* affording them no presumption of correctness. *Id.* (citing *Trau–Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 696–97 (Tenn.2002)).

### Analysis

Cowan first asserts that Harold Clemons's claim for libel in Tennessee did not survive his death prior to trial. In support of this contention, Cowan cites *Benton v. Knoxville News–Sentinel Co.,* 174 Tenn. 661, 130 S.W.2d 106 (1939). Norma Jean Clemons and Larry Clemons agree with this assertion, citing Tennessee Code Annotated § 20–5–102.[6] Therefore, we assume for purposes of this appeal that Harold Clemons's claim for libel did not survive his death.

■ Because Harold Clemons's claim for libel did not survive, Cowan asserts that the trial court erred in allowing Norma Jean Clemons, as surviving spouse of Harold Clemons, to be substituted as a party upon his death. As a result of this error, Cowan contends, the "action is a nullity and any judgement [sic] granted on behalf of this substituted Plaintiff, should be reversed, as unsupported by the Ten-

---

**6.** The statute provides:

No civil action commenced, whether founded on wrongs or contracts, except actions for wrongs affecting the character of the plaintiff, shall abate by the death of either party, but may be revived; nor shall any right of action arising hereafter based on the wrongful act or omission of another,

except actions for wrongs affecting the character, be abated by the death of the party wronged; but the right of action shall pass in like manner as the right of action described in § 20–5–106.

T.C.A. § 20–5–102 (1994). Appellant Cowan did not cite this statute in his appellate brief.

nessee laws of liable [sic]." Cowan's argument is predicated on the jury verdict form; he claims that "the verdicts rendered were joint verdicts rendered in favor of both Plaintiffs jointly, and from a practical standpoint it is impossible to determine the amount the Jury awarded to each party at this point."

In response, Norma Jean Clemons and Larry Clemons point out that Harold Clemons asserted both a libel claim and a claim for tortious interference with a business relationship, and the record does not indicate whether Norma Jean Clemons was substituted on the libel claim as well as the tortious interference claim. However, even if Norma Jean Clemons was substituted on the libel claim, the Appellees contend that Cowan waived the issue by failing to object to the substitution prior to or during the trial. Moreover, they contend that Cowan waived any objection to the jury verdict form by failing to raise the issue before the trial court.

From our review of the record, Norma Jean Clemons's motion for substitution states only that she seeks to be "substituted as plaintiff as successor to the *claim* of plaintiff Harold Clemons," without specifying which claim. (emphasis added). The trial court apparently granted the motion by oral ruling at the pre-trial conference, and a written order was never entered.

In his appellate brief, Cowan cites no authority for his assertion that the trial court erred in substituting Norma Jean Clemons, and includes no citation to the technical record.[7] This alone is sufficient to consider the issues waived. *See Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct.App.2009) (quoting *Bean v. Bean*, 40

S.W.3d 52, 55 (Tenn.Ct.App.2000)) ("Our Courts have 'routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as described by Rule 27(a)(7) constitutes a waiver of the issue[s] [raised].'") (alteration in *Chiozza*).

Moreover, Cowan's argument is in essence a challenge to the jury verdict form. He cites no place in the record in which the issue was presented to the trial court, and we have found none. The joint statement of evidence does not indicate that Cowan ever objected to the jury verdict form, and the argument is not included in his motion for a new trial. We find that this issue was not raised to the trial court below, and thus decline to consider it on appeal. *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn.2006) (citing *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn.1991)).

■ In his brief, Cowan next asserts that "the publication complained of was political speech of a candidate for public office attempting to point out the errors of the incumbent, against whom he was running, in an attempt to show the public the incumbent's errors in the administration of his office." Without citation to authority or any portion of the technical record, Cowan continues as follows:

> While not being able to find a Tennessee case on political free speech, relative to the tort of liable [sic] in Tennessee, the Appellant would assert that political free speech should be the most protected form of free speech and especially protected in the context of a campaign for public office. That said, Defendant would assert that the alleged libelous

---

7. Indeed, in the entirety of his ten-page appellate brief, Cowan's counsel cites only one 1939 case and includes no citations to the technical record, in clear violation of Rule 27(a)(7) of the Tennessee Rules of Appellate

Procedure. This Court has on occasion dismissed an appeal on this basis. *See Chiozza v. Chiozza*, 315 S.W.3d 482 (Tenn.Ct.App. 2009), *no perm. app.*

actions of the Defendant were political free speech and should be protected from actions under the tort of liable [sic], unless it can be clearly and convincingly shown that the Defendant willfully, stated a falsehood, which he knew was false, at the time it was printed, rather than a false statement that was printed that was simply an error.

Cowan then asserts in conclusory fashion that "the facts do not justify a verdict for liable [sic], as a matter of law and in the same vein, the Appellant would aver that the facts do not support a verdict for punitive damages."

This Court has stated that "a 'skeletal argument that is really nothing more than an assertion will not properly preserve a claim.'" *Chiozza*, 315 S.W.3d at 489 (quoting *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn.Ct.App.2006)). "It is not the function of this Court to verify unsupported allegations in a party's brief or to research and construct the party's argument." *Id.* (citing *Bean*, 40 S.W.3d at 56). We must conclude that Cowan has waived this issue.

Finally, Cowan argues that when the jury initially returned with a verdict for punitive damages with no compensatory damages, "the case should have been dismissed at that point and a judgment entered on behalf of the Defendant." Presumably in the alternative, Cowan asserts that the trial court should have given the jury an instruction as to nominal damages.

Cowan again fails to cite any authority in support of these arguments. Moreover, a party who seeks to challenge "an alleged omission in the instructions given to the jury by the trial judge ... must ... point[ ] out such omission to the trial judge at trial by an appropriate request for instruction." *Tatman v. Fort Sanders Reg'l Med. Ctr.*, No. E2000–02163–COA–R3–CV, 2001 WL 378688, at *5–6 (Tenn.Ct.App. Apr. 16, 2001), *no perm. app.* (quoting *Rule v. Empire Gas Corp.*, 563 S.W.2d 551, 554 (Tenn.1978)). Cowan points to no place in the record in which he asked the trial court for such a jury instruction. For these reasons, we must conclude that this issue is also waived.

CONCLUSION

The decision of the trial court is affirmed. The costs of this appeal are taxed to the Appellant Johnny Steve Cowan, and his surety, for which execution may issue if necessary.