IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 10, 2010 Session

## DEBRA M. BARKES ET AL. v. RIVER PARK HOSPITAL, INC.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Warren County**
**No. 946      Larry B. Stanley, Jr., Judge**

---

**No. M2006-01214-SC-R11-CV - Filed October 20, 2010**

---

In this medical negligence case, we review a jury verdict against a hospital based on the hospital's failure to enforce its policies and procedures in patient care. Tennessee law has long recognized that a hospital has a duty to its patients to exercise that degree of care, skill, and diligence used by hospitals generally in its community. After reviewing the record, we hold that material evidence supports the jury's determination that the hospital was 100% at fault for the patient's death. We therefore reverse the Court of Appeals and reinstate the verdict of the jury.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Case Remanded to the Circuit Court for Warren County**

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, and GARY R. WADE, JJ., joined. WILLIAM C. KOCH, JR., J., not participating.

David Randolph Smith, Edmund J. Schmidt III, and John B. Carlson, Nashville, Tennessee, for the appellant, Debra M. Barkes, individually and as surviving spouse of Jewell Wayne Barkes.

C.J. Gideon, Jr., Bryan Essary, and Brian Cummings, Nashville, Tennessee, for the appellee, River Park Hospital, Inc., d/b/a River Park Hospital.

Robyn E. Smith and William B. Hubbard, Nashville, Tennessee, for amicus curiae Tennessee Hospital Association.

## OPINION

### Factual and Procedural History

On the morning of July 26, 2000, Wayne Barkes tilled his garden and then used an ax and other hand tools to clear and clean up the yard at his home. Around noon, Mr. Barkes stopped working and went inside the house because his left arm was hurting. He soaked his arm in water and then applied an ice pack to it. When the pain did not subside and Mr. Barkes began to feel worse, his wife drove him to the emergency room at River Park Hospital ("River Park" or "the hospital") in McMinnville, Tennessee, for medical treatment.

When they arrived at River Park's emergency room, Mr. Barkes sat in a chair while Mrs. Barkes filled out the admission paperwork for him. At 4:18 pm, he was initially seen and triaged by Jeff Jolly, a paramedic employed by River Park. Mr. Barkes complained of pain in his left forearm and wrist. Mrs. Barkes testified that she also told paramedic Jolly that Mr. Barkes was sick to his stomach, although Mr. Jolly denied receiving this information. Mr. Jolly took Mr. Barkes' vital signs, which indicated his blood pressure was 130/70, his pulse was 100, and his respiratory rate was 20.

After Mr. Jolly's triage evaluation, Mr. Barkes was seen by Sherry Kinkade, a nurse practitioner. Ms. Kinkade examined Mr. Barkes' left forearm and diagnosed a sprain due to overuse. Not observing any symptoms suggestive of a cardiac problem, Ms. Kinkade did not deem a cardiac workup necessary or appropriate. Ms. Kinkade admitted that she did not ask Mr. Barkes if he was a smoker or if he had a family history of cardiac problems. She further admitted that it was more probable than not that she did not ask Mr. Barkes about other things that she left blank on his emergency room chart, such as whether he suffered from asthma, arthritis, cancer, migraines, hepatitis, cardiac problems, tuberculosis, or drug and/or alcohol abuse.

Ms. Kinkade then discussed Mr. Barkes' presentation and symptoms and her diagnosis with Dr. Rosa Stone, the emergency room physician. After this consultation, Dr. Stone agreed with the diagnosis and treatment plan and signed the discharge papers for Mr. Barkes. Mr. Barkes was discharged from River Park's emergency room at 4:45 pm, with instructions to take an over-the-counter pain reliever, to ice his forearm, and to rest the arm. He was not seen or evaluated by a physician.

Less than two hours after leaving the hospital with a diagnosis of an arm sprain, Mr. Barkes collapsed and his wife found him unconscious on the bathroom floor of their home. At 7:27 pm, Mr. Barkes arrived by ambulance at River Park. Attempts to

resuscitate him from cardiac arrest were unsuccessful, and he was pronounced dead of a myocardial infarction and sudden cardiac death.

Mrs. Barkes brought this wrongful death action against River Park and several other defendants, including paramedic Jolly, nurse practitioner Kinkade, Dr. Stone, several additional physicians, PhyAmerica (the medical group that employed the physicians who staffed the hospital's emergency room), and other entities related to the Hospital Corporation of America ("HCA") and the TriStar Health System. By the time of trial, the only remaining defendant was River Park; the claims against the other defendants had been either voluntarily or involuntarily dismissed.[1] River Park alleged comparative fault claims against PhyAmerica employees Nurse Kinkade, Dr. Stone, and Dr. Mark Weeks, the co-director of the emergency department at the time of Mr. Barkes' death.

In her claim against River Park, Mrs. Barkes asserted that the care and treatment provided to her husband in the hospital's emergency room fell below the standard of reasonable care under the circumstances. Specifically, Mrs. Barkes alleged that had Mr. Barkes been triaged by a registered nurse instead of a paramedic, and had he been seen and examined by a physician instead of a nurse practitioner, the appropriate inquiries would have been made and the potential warning signs of a heart attack would have been observed. Mrs. Barkes also argued that had a physician examined her husband, the physician would have observed that Mr. Barkes had many potential risk factors for a heart attack, including being a heavy smoker, being obese with high cholesterol levels and having a family history of heart disease.

At trial, Mrs. Barkes presented the expert testimony of a hospital administrator with twenty-nine years of experience at various Middle Tennessee hospitals, a board-certified emergency medicine physician, and a cardiologist, all of whom testified that the treatment of Mr. Barkes in River Park's emergency room fell below the applicable standard of reasonable care for a hospital under the circumstances. These experts agreed that the failure of River Park to follow its own written policy requiring that a physician see and examine every patient who presented at the emergency room was evidence of River Park's breach of its duty to provide reasonable care.

---

[1] Mrs. Barkes voluntarily dismissed her claims against the River Park physicians, Nurse Kinkade, and PhyAmerica when their medical malpractice insurance carrier went into bankruptcy. HCA and TriStar were dismissed by summary judgment. The claim against paramedic Jolly was voluntarily dismissed although Mrs. Barkes continued to pursue her vicarious liability claim against River Park for paramedic Jolly's alleged negligence.

At the end of the week-long trial, the trial court partially granted River Park Hospital's motion for directed verdict, dismissing claims against River Park pertaining to maintaining a safe environment and negligent hiring, claims that River Park was negligent in the establishment of policies and procedures, and claims that River Park did not properly oversee the care provided in the Emergency Room. The only remaining claim of direct liability against the hospital that survived was whether River Park was liable for not enforcing the written policies and procedures existing at the time of Mr. Barkes' treatment.

The jury returned a verdict finding River Park 100% at fault for the death of Mr. Barkes. The jury found no fault on the part of the individual health care providers who remained in the case due to River Park's comparative fault claims. The trial court approved the verdict and entered judgment in the amount of the jury's monetary award.

River Park appealed. The Court of Appeals reversed the trial court's judgment on the jury verdict, holding that Tennessee law does not recognize a theory of corporate liability under which the hospital could be found responsible to a patient absent a finding of vicarious liability for negligence by a treating health care professional. Barkes v. River Park Hosp., Inc., No. M2006-01214-COA-R3-CV, 2008 WL 5423981, at *1 (Tenn. Ct. App. Dec. 29, 2008). Because the jury verdict found River Park 100% at fault and assigned zero fault to the individual treating health care providers, the Court of Appeals held the verdict to be inconsistent and irreconcilable and remanded the case for a new trial. We granted Mrs. Barkes permission to appeal.

## Hospital Liability To Patients

The issue presented on appeal is whether Mrs. Barkes may recover against River Park Hospital under a direct theory of negligence. The jury found the hospital 100% at fault for failing to enforce its written policies and procedures in the course of Mr. Barkes' treatment. We therefore must determine whether Tennessee law permits a cause of action against a hospital for failing to enforce its policies and procedures in patient care.

We have not previously addressed the doctrine of corporate negligence as to hospitals, and we need neither adopt nor reject it to resolve this appeal. Instead, we rely on prior Tennessee decisions permitting direct negligence actions against hospitals that have failed to exercise reasonable care in discharging duties owed directly to patients. For example, in Thompson v. Methodist Hosp., this Court stated that "[t]he measure of duty of a hospital is to exercise that degree of care, skill, and diligence used by hospitals generally in that community." 367 S.W.2d 134 (Tenn. 1962) (quoting 41 C.J.S. Hospitals § 8). We also have affirmed hospital liability where the "hospital failed to discharge its duty to make its premises safe." Pullins v. Fentress County Gen. Hosp., 594 S.W.2d 663, 670 (Tenn. 1979).

Furthermore, we have stated that "a hospital is required to exercise such reasonable care toward a patient as his known condition may require, and the extent and character of this care depends upon the circumstances of each case," O'Quin v. Baptist Mem'l Hosp., 201 S.W.2d 694, 697 (Tenn. 1947), and that "[w]hen a patient enters a hospital . . . he is entitled to such reasonable attention as his safety may require." James v. Turner, 201 S.W.2d 691, 694 (Tenn. 1941). Tennessee law clearly recognizes that hospitals owe a duty of reasonable care to their patients and may be directly liable to patients independent of any liability based on the hospital's employees or agents. As such, Mrs. Barkes' cause of action against River Park is cognizable in Tennessee, and the Court of Appeals erred when it held that there was no basis on which River Park could be held directly liable to Mrs. Barkes.

### Sufficiency of the Evidence

We now review the proof presented by Mrs. Barkes at trial to determine whether there is sufficient evidence supporting the jury's verdict finding River Park to be 100% at fault. "Findings of fact by a jury in a civil action shall be set aside only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d). To determine if there is material evidence to support the jury verdict, we "take the strongest legitimate view of all the evidence in favor of the verdict, assume the truth of all evidence that supports the verdict, allow all reasonable inferences to sustain the verdict, and discard all countervailing evidence." Whaley v. Perkins, 197 S.W.3d 665, 671 (Tenn. 2006) (quoting Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 704-05 (Tenn. 2000)).

After carefully reviewing the record, we observe the following material evidence:

• River Park's policy in effect at the time of Mr. Barkes' treatment stated, "Any patient arriving at the Emergency Department will be seen by the emergency department nurse; triaged; and then seen by the appropriate physician." It also stated, "All patients presenting for treatment in the emergency room are assessed by an emergency physician."

• Alan Markowitz, PhD., an expert witness regarding hospital administration,[2] testified that the standard of care at the time of Mr. Barkes' treatment for hospitals similarly situated to River Park was for a registered nurse to triage the patient and a physician to "lay hands" on the patient, which is commensurate with River Park's policy.

_____

[2] Unless the negligence is obvious and readily understandable by an average layperson, expert testimony will be required to demonstrate the applicable standard of care and breach of that standard. See Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86, 92 (Tenn. 1999); Baldwin v. Knight, 569 S.W.2d 450, 456 (Tenn. 1978).

- Nurse Practioner Kinkade, the medical provider who treated Mr. Barkes, testified that she was not aware of River Park's policy requiring every patient presenting in the emergency department to be seen by a physician.

- Dr. Rosa Stone, who was working in River Park's emergency department at the time of Mr. Barkes' treatment, also testified that she was not aware of River Park's policy requiring that any patient be seen by the appropriate physician.

- Dr. Stone testified that, when being consulted by Nurse Practioner Kinkade about Ms. Kinkade's decision to discharge Mr. Barkes, she asked Ms. Kinkade whether Mr. Barkes exhibited any signs of myocardial infarction, specifically whether he had prior cardiac history, shortness of breath, any other pain, and chest pain, to exclude cardiac related illness.

- Dr. Stone testified that she "would have reevalauted him" had she known that Mr. Barkes had a family history of cardiac problems, had high cholesterol, was pale, was sweating, was nauseous, was overweight, and was a smoker, all of which is information that a physician might elicit when evaluating a patient.

- Dr. Morton J. Kern, an expert witness, testified that the "treatment of Mr. Barkes was below the standard of care for emergency rooms looking at patients of this same presentation," and that had the appropriate standard of care been applied, "Such treatment, I believe, would have saved his life."

To obtain a favorable verdict from the jury, Mrs. Barkes was required to show at trial that River Park failed to exercise that degree of care, skill, and diligence used by hospitals generally in the hospital's community, Thompson, 367 S.W.2d at 138 (quoting 41 C.J.S. Hospitals § 8), and that its failure was the cause in fact and a proximate cause of the patient's death. See, e.g., Hale v. Ostrow, 166 S.W.3d 713, 716 (Tenn. 2005) ("A negligence claim requires proof of the following familiar elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." (citing Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998))). Based on the material evidence presented at trial, the jury was entitled to draw the reasonable conclusion that the hospital's failure to inform the emergency room health care providers of its policies and its failure to effectively implement a system of oversight and enforcement of its policies was negligence that caused Mr. Barkes' death. We therefore hold that material evidence supports the jury verdict.

## Conclusion

We hold that Tennessee law recognizes that hospitals may be found directly liable to their patients. We reaffirm prior Tennessee decisions permitting negligence actions against hospitals that have failed to exercise reasonable care in discharging duties owed directly to patients. We further hold that there is material evidence supporting the jury's verdict that River Park Hospital was 100% at fault for Mr. Barkes' death. The judgment of the Court of Appeals therefore is reversed, and the judgment of the trial court approving and entering the jury verdict is reinstated. Costs on appeal are assessed to the appellee, River Park Hospital, Inc., d/b/a River Park Hospital, for which execution may issue if necessary.


_____
SHARON G. LEE, JUSTICE