# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
May 8, 2013 Session

## DANNA OWEN v. TIMOTHY SCOTT HUTTEN

**Appeal from the Circuit Court for Williamson County**
**No. 2010550      Michael Binkley, Judge**

---

**No. M2012-02387-COA-R3-CV - Filed September 27, 2013**

---

This case involves a man and a woman who formed a limited liability company under the Tennessee Revised Limited Liability Company Act, Tenn. Code Ann. §§ 48-249-101 *et seq*, with the ostensible purpose of investing in real estate.  The only investment it made, however, was the purchase of a house for the man and his children to live in.  The woman supplied all the money to buy the house, as well as all the capital that was invested in the company.  After personal differences arose between the parties, the woman petitioned the court to dissolve the company and to distribute its assets.  The man asked the court to divide the assets of the company equally between the parties in accordance with the provisions of Tenn. Code Ann. § 48-249-305(b).  The woman asked the court to order that she be repaid her entire financial contribution to the company.  The trial court dissolved the company. After hearing proof and argument, it ordered that the house be sold, with the net proceeds of the sale to be applied first to the return of the woman's capital contributions, with any profits beyond those contributions to be divided equally between the parties.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Joshua G. Strickland, David Scott Parsley, Michael K. Parsley, Nashville, Tennessee, for the appellant, Timothy Scott Hutten.

John Lester Whitfield, Nashville, Tennessee, for the appellee, Danna Owen.

# OPINION

## I. THE FORMATION AND DISSOLUTION OF AN LLC

The parties to this dispute are plaintiff Danna Owen, an experienced real estate investor, and defendant Timothy Hutten, a disabled veteran and former advertising executive. The parties met in early 2008 and began a dating relationship. Ms. Owen was relatively well off, while Mr. Hutten primarily relied on his military disability check for living expenses. Mr. Hutten wanted to purchase a home, but did not have the means to do so. Ms. Owen wished to help him. She consulted with her attorneys, and on the basis of their advice, she and Mr. Hutten formed a Limited Liability Company called *Back 2 Good, LLC*.

The Articles of Organization for the LLC were filed with the Tennessee Secretary of State on December 17, 2008. Mr. Hutten signed the Articles as the organizer of the LLC, and Mr. Hutten and Ms. Owen both signed as its members. Although Mr. Hutten testified that the parties intended to use the LLC as a vehicle for real estate investment, the only property it acquired was a residence located at 5011 Country Club Court in Brentwood. All the funds to purchase the residence ($340,000) were supplied by Ms. Owen. The warranty deed to the property, executed on December 23, 2008, named *Back 2 Good, LLC* as owner. After the purchase, extensive renovations were done on the property. Ms. Owen paid the entire cost of those renovations, about $260,000.

In April of 2009 Mr. Hutten, a divorced father of two teenaged children, moved into 5011 Country Club Court with his children. At about the same time, the relationship between Ms. Owen and Mr. Hutten soured. Ms. Owen filed a Complaint for Declaratory Judgment in the Williamson County Circuit Court on October 13, 2010, asking the court to declare the rights of the parties to the real property at 5011 Country Club Court.

Ms. Owen alleged that the parties had contemplated that Mr. Hutten would sign a written lease and occupy the property, and that his rental payments would go towards the purchase price until he owned the property. In the alternative, the LLC would eventually sell the property and repay Ms. Owens for the purchase price. She further alleged that Mr. Hutten had refused to sign the lease and did not made any rental payments. She accordingly asked the court to quiet title and grant her exclusive ownership of the property, to terminate Mr. Hutten's membership in *Back 2 Good*, *LLC*, and order Mr. Hutten to pay reasonable rent for the time he had occupied the property.

Mr. Hutten's answer denied that the parties had contemplated that he would sign a lease or that he refused to sign one. He admitted that he paid no rent, but claimed that he was never required to pay rent, and he denied that he owed the LLC or Ms. Owen any money. He asserted that the LLC owned the property, that the parties each owned 50% of the LLC, and thus that he was entitled to 50% of its assets. Ms. Owen subsequently amended her complaint to add a demand that the court terminate the LLC, pursuant to Tenn. Code Ann. § 48-249-616.

On September 2, 2011, Ms. Owen filed a motion for partial summary judgment. She asserted that she had a statutory a right to a judicial termination of *Back 2 Good, LLC*. She contended that under Tenn. Code Ann. § 48-249-620 the court had the power to dissolve the LLC and to distribute its assets on any basis that it deemed equitable. She also contended that because she paid the purchase price and all the costs of renovation, the only equitable distribution would be to award her the real property by judicial deed. On December 1, 2011, the court entered a partial summary judgment for Ms. Owen, dissolving the LLC and declaring that a hearing would be set to determine the distribution of its assets.

## II. THE DISTRIBUTION OF THE LLC'S ASSETS

The hearing was conducted on September 21, 2012. The parties were the only witnesses to testify. There were some relatively minor discrepancies between the testimony of Ms. Owen and Mr. Hutten. For example, Ms. Owen testified that she had an Operating Agreement prepared for the LLC, as is required by Tenn. Code Ann. § 48-249-202 and 203, and that Mr. Hutten promised several times to sign it, but never did, so the agreement was never filed. Mr. Hutten admitted that he did not sign the document, but said that he never saw it. Similarly, Ms. Owen testified that she prepared a lease agreement for the house at 5011 Country Club Court, which Mr. Hutten refused to sign. Mr. Hutten testified that he never saw the lease because she never presented it to him.

However, both parties agreed that Ms. Owen was the source of all the money used to purchase and renovate the real property at 5011 Country Club Court. They also agreed that Mr. Hutten did not make any financial contribution to the house or to *Back 2 Good, LLC*. Ms. Owen testified that she did not write checks from her personal account to purchase or renovate the real estate, but rather transferred money from her personal account to the LLC account. Then she wrote checks from that account for real estate purposes. For his part, Mr. Hutten testified that his contribution was to supervise the renovation of the property. He declared that he "[w]atched over subcontractors, made sure they weren't, you know, stealing, slacking . . . provided some lunches for the crews to, you know, kind of keep them on the job, maintain morale, that sort of thing."

Ms. Owen entered into the record K-1 and 1065 forms for the years 2008, 2009 and 2010, which were filed as part of her personal income tax returns.[1] Such forms are used to report income or loss that flows through business entities such as partnerships and LLCs. The 2008 form showed a contribution of $350,000 by Ms. Owen in the section for "capital contributed during the year." The 2009 form listed her capital contribution at $237,771, and the 2010 form listed her capital contribution at $6,601.

A separate form identified the LLC's business activity as "investment in real estate." The K-1 forms did not show any profits, but rather losses of several thousand dollars every year. Those losses were listed as being due to "investment expenses," which Ms. Owen testified reflected her payment of insurance, utilities and other expenses on the property at 5011 Country Club Court. She also submitted an itemized "Schedule of Transfers to *Back 2 Good*, *LLC*" which showed her total contributions to be $609,800.

At the conclusion of testimony and argument, the trial court ruled from the bench. Its ruling was memorialized in a judgment entered on October 10, 2012. The court found that Ms. Owen had made capital contributions to the LLC totaling $609,800, and that Mr. Hutten had made no capital contribution. The court rejected Mr. Hutten's arguments that the contributions were a gift to him or that he had somehow acquired sweat equity in the house by overseeing the renovation work on the property.

The court concluded that the best way to distribute the assets of the LLC would be to place the house on the market for sale "as quickly as possible," with Mr. Hutten given 60 days to vacate the premises. Ms. Owen was awarded the net proceeds after payment of the expenses of the sale, up to a maximum of $609,800. The court declared that if the net proceeds exceeded that amount, the remainder was to be split equally between the parties.[2] The court denied Ms. Owen's request that Mr. Hutten be ordered to pay the fair rental value of the property he had occupied at the rate of $2,000 a month. Mr. Hutten appealed.

### III. ANALYSIS

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review

---

[1]Mr. Hutten acknowledged that he did not file income taxes in 2008, 2009, or 2010.

[2]Ms. Owen's attorney stated during oral argument that the house was sold pursuant to the trial court's final order, and that it fetched less than $609,800.

a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

## A. Capital Contribution

The Tennessee Revised Limited Liability Company Act, Tenn. Code Ann. §§ 48-249-101 *et seq*., contains detailed provisions for the formation, financing, management and dissolution of Limited Liability Companies. An LLC may be created "for the purpose of engaging in any lawful business." Tenn. Code Ann. § 48- 249-104(a). It is formed by filing Articles of Organization with the Tennessee Secretary of State, containing the information required by Tenn. Code Ann. § 48-249-202.

The Act contemplates (but does not require) that the members of the LLC enter into an Operating Agreement to regulate the affairs of the organization, which need not be in writing. Tenn. Code Ann. § 48-249-203(a). It is undisputed that no Operating Agreement was ever signed or filed for *Back 2 Good, LLC*. Ms. Owen testified that Mr. Hutten refused to sign the Operating Agreement that she prepared. She also testified that Mr. Hutten fully understood that she expected to eventually receive repayment of her investment, either through the payment of rent or through the sale of the property, and that although he did not pay any rent, he moved into the house with an understanding of her expectations.

A "capital contribution"is defined as "[c]ash, property, or services contributed by partners to a partnership,"or "[f]unds made available by a shareholder, usually without an increase in stock holdings." BLACK'S LAW DICTIONARY (7th ed. 1999). The trial court concluded in this case that Ms. Owen's investments in *Back 2 Good, LLC* constituted a capital contribution to the company, and that upon the dissolution of the company, she was entitled to the return of her contribution.

The statutes governing capital contributions to an LLC are found at Tenn. Code Ann. § 48-249-301 and 302. For the most part, those statutes concern the legal effect of an agreement to make a contribution to an LLC. Among other things, they state that "[n]either a purported contribution nor an offer of consideration to make a contribution shall be treated as a contribution," until it is accepted as a contribution by its members and the amount and value of the contribution are recorded in the LLC documents or its records. Tenn. Code Ann. § 48-249-301(c). Mr. Hutten insists that the parties did not comply with the above formalities regarding contributions, and, therefore, the court should have been precluded from finding that Ms. Owen made any such contributions to the LLC.

We note, however, that Ms. Owen deposited the money to purchase the house at 5011

Country Club Court into the LLC account. Mr. Hutten moved into the house and lived there for over two years, thereby accepting the benefit of Ms. Owen's contribution. The record includes the K-1 and 1065 forms for *Back 2 Good, LLC*, for the years 2008, 2009, and 2010, which Ms. Owen filed with her personal income tax returns. They document "the amount and value" of her financial contributions to the company under a column for "Capital Contributed." Mr. Hutten does not dispute the fact or the amount of those contributions, but only its characterization as a "capital contribution."

Mr. Hutten relies on the case of *Braden v. Strong*, 2009 WL 276737 (Tenn. Ct. App. Feb. 3, 2009), which involved a dispute over the distribution of assets upon the dissolution of three partnerships. One partner, Mr. Braden, had invested a considerable sum in one of the businesses to keep it afloat. He asserted that it was a capital contribution, and he asked the court to order the entire sum returned to him. The trial court found that there was no express consent by the other partner, Ms. Strong, to a capital contribution, but that "the money had to come from somewhere," and that Mr. Braden supplied it, so there was implied consent.

This court reversed, because there was no evidence in the record to support a finding of implied consent, but only the trial court's observation that "the money had to come from somewhere." Mr. Hutten particularly focuses on our statement that "[w]e find no basis upon which to conclude that the mere infusion of cash into a business should be deemed a capital contribution." *Braden v. Strong*, 2009 WL 276737 at *3. We also suggested that "his cash contributions could just as easily have been treated as loans to the partnership." *Id.*

In the present case, Mr. Hutten argues that the money contributed by Ms. Owen was not, and could not be, a loan, observing that no promissory notes or other loan documents were ever executed. His attorney was accordingly asked at oral argument what he thought was the true nature of Ms. Owen's contribution, and he suggested that because of the personal relationship between the parties it was meant to be a gift. But he was unable to direct our attention to any case where an individual was reported to have made a gift to an LLC. Further, because Ms. Owen owned 50% of the LLC, Mr. Hutten's after-the-fact characterization of the money as a gift leads to an illogical conclusion.

There are significant differences between the facts of *Braden v. Strong* and the facts in the present case, even aside from the fact that *Braden* involved partnerships, while an LLC is at the center of the present case. One important distinction is that the *Braden* partnerships encompassed a number of different working businesses, including landscaping, construction, antiques, and a cattle operation. The partners regularly worked at those businesses over a period of years, generating revenue and profits. In contrast, *Back 2 Good, LLC* simply bought and held a single piece of property, without transacting any other business.

Two of the three partnerships in the *Braden* case operated under written agreements that set out each partner's rights and responsibilities, including their respective contributions of capital and labor to the formation of the business, the division of labor between them, and the share each was entitled to as a result of those contributions. Deeming the money Mr. Braden infused into the business to be a capital contribution without the specific assent of the partners would have been in derogation of those specific agreements.[3]

Conversely, there was no Operating Agreement in the present case, but there was testimony by Ms. Owen that she intended her investment to be a capital contribution and that Mr. Hutten understood it as such. Further, there was no alternate explanation for the investment that made any sense. We accordingly agree with the trial court's conclusion that Ms. Owen's investment in *Back 2 Good, LLC* was a capital contribution to the company.

### B. The Distribution of the LLC's Assets

In the absence of an Operating Agreement containing provisions to the contrary, the governing statutes in the Tennessee Revised Limited Liability Company Act presume that the members of an LLC will share equally in both profits and losses, Tenn. Code Ann. § 48-249-304(b), and also that they will equally share in any distributions. Tenn. Code Ann. § 48-249-305(b). Mr. Hutten contends that under the second of those statutes, he is entitled to half of the proceeds from the sale of the house at 5011 Country Club Court.

There are several different methods for the dissolution of an LLC. It may be dissolved by the agreement of its members or organizers, Tenn. Code Ann. §§ 48-249-602 and 603, by administrative action, Tenn. Code Ann. §§ 48-249-604 and 605, or by judicial action, Tenn. Code Ann. §§ 48-249-617 and 618. When, as in the present case, an LLC is dissolved by judicial action, the relevant statute gives the court broad authority over the ultimate distribution of its assets:

> A court may grant any equitable relief it considers just and reasonable under
> the circumstances, may dissolve an LLC or may direct that the dissolved LLC
> be merged into another or new LLC or other entity, or otherwise be terminated,
> on the terms and conditions the court deems equitable.

---

[3]The opinion cited by Mr. Hutten was one of two involving the dissolution and distribution of the assets of the three partnerships. That opinion does not contain much information about the formation and operation of the partnerships. We have drawn the information we have cited from this court's earlier opinion in that case, *Braden v. Strong*, 2006 WL 369274 (Tenn. Ct. App. Feb. 16, 2006) (no Tenn. R. App. P. 11 application filed).

Tenn. Code Ann. § 48-249-616.

The trial court exercised its discretion in this case to fashion a judgment that allowed the return to Ms. Owen of her capital contribution, to the extent that it could be recovered from the sale of the property that was purchased by that contribution. The court also decreed that if the net proceeds of the sale exceeded Ms. Owen's contribution, those proceeds were to be divided equally between the parties.

A court's discretionary decision may be reversed on appeal only if that discretion has been abused. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002) *Messer Griesheim Industries v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 610 (Tenn. Ct. App. 2001).

> A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.*" State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge v. Eldridge*, 42 S.W.3d at 85.

In this case, the trial court reached an equitable result that was just and reasonable, which was within its discretion under the controlling law, and which did not cause any injustice to Mr. Hutten. We accordingly affirm the trial court's judgment.

## IV. CONCLUSION

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Williamson County for any further proceedings. Tax the costs on appeal to the appellant, Timothy Scott Hutten.

_____
PATRICIA J. COTTRELL, JUDGE