
IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 25, 2017 Session

## KENNETH A. PARIGIN ET AL. V. M. SHANE MILLS

**Appeal from the Chancery Court for Knox County**
**No. 180867-2      Clarence E. Pridemore, Jr., Chancellor**

_____

### No. E2016-00640-COA-R3-CV

_____

The dispositive issue in this appeal is whether the defendant, who was actively involved in the formation of a limited liability company, is a member of the company. The trial court held that the defendant's prospective membership interest was contingent on making a financial contribution of $180,000 plus business equipment, and because he failed to make the required contributions, he was not a member. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR. and THOMAS R. FRIERSON, II, JJ., joined.

William P. Price, III, Knoxville, Tennessee, for the appellant, M. Shane Mills.

Wynne du M. Caffey-Knight and John Towers Rice, Knoxville, Tennessee, for the appellees, Kenneth A. Parigin and Kimberly A. Wheatley.

### OPINION

Plaintiffs, Kenneth A. Parigin and Kimberly A. Wheatley, filed this action for a declaratory judgment, pursuant to Tenn. Code Ann. § 29-14-102 and Tenn. R. Civ. P. 57, to identify the members and to determine their respective membership interests in The Zone, LLC ("The Zone"), a limited liability company.[1] Plaintiffs contend the defendant, M. Shane Mills, has no membership interest in The Zone while Mr. Mills claims he owns a two-thirds membership interest based on his intangible contributions leading up to and during the formation of the company.

---

[1] Plaintiffs also sought the appointment of a receiver, injunctive relief, and an accounting of assets and expenses, which are not the subject of this appeal.

Shane Mills claims that in early 2008 he alone conceived of the idea for the business and began looking for investors. Plaintiffs dispute this fact and state that another individual, Lee Landers, in concert with Mr. Mills, developed the idea in 2009. Plaintiffs further assert that Ms. Wheatley joined forces with Mr. Landers and Mr. Mills shortly thereafter to research the concept and to determine its viability as a business. As a result of their discussions, Mr. Landers, Mr. Mills, and Ms. Wheatley put a business plan together. Then, on December 14, 2009, Mr. Mills and Mr. Landers met with an attorney, Gordon Foster, to discuss creating a limited liability company ("LLC").

Based on his discussions with Mr. Mills and Mr. Landers, Mr. Foster assumed that Mr. Mills and Mr. Landers were the only members of the LLC and that they would have an equal interest in the company. Mr. Foster drafted the articles of organization for The Zone ("the Articles") and filed them with the secretary of state on January 11, 2009. The Articles provide that The Zone is a member-managed LLC with two members. Shortly after filing the Articles, Mr. Foster drafted an operating agreement listing Mr. Mills and Mr. Landers as the members; however, the agreement was never signed.

Mr. Mills contends the Articles and the unexecuted operating agreement incorrectly stated the LLC had two members, because he was the only member at the time of formation.[2] Mr. Landers, who is not a party to this action, disputed Mr. Mills's claim by testifying that Mr. Mills told Mr. Landers at the time that he—Mr. Mills—intended to invest $180,000 and also to contribute equipment, and that Mr. Landers would be required to make the same financial contribution for an equal share. Subsequent to formation, both Mr. Mills and Mr. Landers visited a number of sites in and around Knoxville in order to find the best location for the business. After a period of time, Mr. Landers concluded that he did not have the financial means to make a significant contribution, and he walked away from the project.

In his search for additional investors, Mr. Mills met with Mr. Parigin on June 23, 2010. Following their discussion, Mr. Parigin agreed to invest, and he gave Mr. Mills a check payable to "The Zone" for $217,370. Mr. Mills deposited the check in The Zone's bank account that same day. On the memorandum line, Mr. Parigin wrote: "33 1/3 percent ownership in The Zone, LLC." Mr. Mills does not refute Mr. Parigin's claim of a one-third membership interest as stated on the check. Instead, Mr. Mills insists that he owned a two-thirds interest and Mr. Parigin owned a one-third interest.

Mr. Parigin disagrees with Mr. Mills's testimony, stating The Zone was to have three members, Mr. Mills, Mr. Parigin, and Dr. Robert Davis, each with one-third

---

[2] Mr. Parigin filed an annual report with the secretary of state, dated April 19, 2011, which listed the managers as Mr. Parigin, Mr. Mills, and Ms. Wheatley. Mr. Parigin signed the form in his capacity as member.

interest, and possibly another investor, Mr. Landers. Mr. Parigin also explained that his monetary contribution entitled him to a one-half interest in the LLC if Dr. Davis did not invest. In addition, Mr. Parigin testified that Mr. Mills's membership interest, if any, was contingent upon making the required financial contribution in the form of equipment for the business, "and I don't know–maybe $180,000." Mr. Mills disputed this testimony, stating that he was a member from the LLC's inception and that his membership interest never depended upon his financial contribution.

Attorney Gordon Foster's testimony corroborated that of Mr. Parigin. Mr. Foster further testified that on June 22, 2010, a day before Mr. Parigin delivered his check in the amount of $217,370, Mr. Foster prepared a second draft of the operating agreement stating that Mr. Mills and Mr. Parigin would each contribute $217,500 and would each receive a 50 percent membership interest, specifically 43.5 shares each. The proposed agreement also provided that Dr. Davis would have a six-month option to become a member with a $217,500 contribution, which would entitle him to a membership interest equal to that of Mr. Mills and Mr. Parigin, resulting in 43.5 shares a piece. As a consequence, if Dr. Davis exercised his option, he, Mr. Mills, and Mr. Parigin would each have a one-third membership interest.

Additionally, Mr. Foster testified that it was at this time when he learned Mr. Landers was not a member of The Zone because he could not make a financial contribution. However, the operating agreement would afford Mr. Landers the opportunity to acquire up to ten shares. Mr. Foster "customized" Section 4.1 of the operating agreement to state:

> **4.1 <u>Initial Contributions.</u>** The Company requires 650,000 shares to be capitalized as needed. Shares of the Company are initially valued at $5,000.00 each. The original Members shall have the shares designated on Exhibit A as a result of their ideas, efforts, and services in formulating the business concept and plan, site acquisition….

Exhibit A, which was a spreadsheet, listed Mr. Mills and Mr. Parigin in the "Initial Members" column, with $217,500 stated along with the words, "at inception." The spreadsheet also indicated that each would receive 43.5 shares. Mr. Foster explained that it was his understanding "there was sweat equity involved in addition to just money," though he did not know specifically what proportion of Mr. Mills's $217,500 contribution would be in the form of sweat equity and what proportion would be in the form of cash. The second draft of the operating agreement contained only two signature lines, one for Mr. Parigin and one for Mr. Mills. Mr. Mills signed the agreement; Mr. Parigin did not.

After Mr. Parigin and Mr. Mills identified an appropriate site at 5331 Western Avenue in Knoxville for The Zone to conduct its business, the parties applied for a loan from United Capital Lending dba People's Home Equity, Inc. to be used to purchase the building. The record contains two different notices from People's Home Equity, both dated March 11, 2010, and each stating that a loan in the amount of $1,350,000 had been approved. One notice identified Mr. Mills and his wife, Jenny L. Mills, as the borrowers; the other notice identified Mr. Mills, Jenny Mills, Mr. Landers, and Ms. "Whealey" as the borrowers. However, the parties did not complete the loan process. Instead, Mr. Mills, Jenny Mills, Dr. Davis, and Mr. Parigin signed a lease for the same building for a term of ten years, beginning on July 1, 2010. The Zone opened for business in August 2010 at the Western Avenue address in Knoxville. During this time period, Mr. Landers visited and called schools in the area to market the business.

Immediately before The Zone opened for business, the company experienced cash shortages. Thus, Ms. Wheatley contributed $50,000 "to keep things going," with the understanding that she would gain a membership interest: "Yes. We were under the gun to get the building open. School was starting in a couple of weeks and, you know, obviously, Ken Parigin had already made his contribution. . . ."[3] Mr. Mills, on the other hand, considered Ms. Wheatley's contribution to be a loan, and claims he never had a discussion with her about becoming a member. Ms. Wheatley had a full-time job at the time but worked for the company "when [she] could." She also attended weekly management meetings. Mr. Landers, who continued to work for The Zone without compensation until May of 2011, explained that "I was going to try to, at the last moment, try to get money into this. I wanted to be a part of it, really bad."

When Dr. Davis chose not to invest, Mr. Mills searched for prospective investors. Mr. Landers testified to the company's dire financial situation at the time, stating that at most of their meetings, Mr. Mills, Mr. Landers, Ms. Wheatley, and L.J. Robinson (The Zone's secretary) repeatedly discussed the need for capital. Mr. Landers also testified, "[W]e asked [Mr. Mills] to bring the money that he claimed he was going to bring in and—produce what he said he had, and it never would—never came forth." Mr. Landers stated, "I was told at one time [by Mr. Mills]—and I won't ever forget it . . . that I couldn't be a part of this because I didn't have money in it. It took money to be a part of this." He further testified that Mr. Mills told everyone involved that he—Mr. Mills—intended to refinance his house so that he could put money into the business and purchase equipment. Ms. Wheatley confirmed this testimony. Additionally, Ms. Robinson testified that Mr. Mills told her he had already refinanced his house and had

---

[3] The record contains two cashier's checks from SunTrust Bank, one for $40,000 and one for $10,000, dated July 30, 2010, and August 5, 2010, respectively. Each cashier's check is payable to the order of "The Zone, LLC" and lists Ms. Wheatley as the purchaser.

also bought some equipment for the business. Ms. Robinson, acting in her capacity as secretary of the LLC, requested receipts, but Mr. Mills never provided them.

As Ms. Robinson continued to press Mr. Mills for receipts showing his monetary contribution and his purchase of equipment, Mr. Mills became irate, and "communication started to go downhill." The Zone had two different bank accounts. Mr. Mills controlled the account with the smaller balance used to pay nominal bills and expenses. Ms. Robinson controlled the larger account used for operating expenses. In mid-May of 2011, Mr. Mills diverted The Zone's operating revenue into a different checking account, over which he had sole access. He prevented Mr. Parigin, Ms. Wheatley, and Ms. Robinson from accessing the account, and refused to grant them access to any of The Zone's accounting or financial records.

On July 19, 2011, Mr. Parigin and Ms. Wheatley commenced this action seeking a declaration that Mr. Mills owned no membership interest in The Zone, and that they possessed membership interests based on their financial contributions.

The case was tried on January 19, 2012. At the conclusion of the trial, the chancery court stated its factual findings from the bench, and we summarize the findings most pertinent to the issues in this appeal as follows:

1. Mr. Mills, Mr. Landers, and Ms. Wheatley researched the concept for The Zone and made a loan application for $1,350,000 to purchase a facility. The trial court noted that the loan application indicated that all three individuals were "pretty heavily involved."
2. The parties never entered into an operating agreement.
3. Mr. Landers's contribution in the form of ideas and services was equal to that of Mr. Mills.
4. Mr. Landers was told he would need to make a financial investment or he could not become a member.
5. Ms. Wheatley wrote a check for $50,000 to The Zone, which was to be her contribution toward a membership.
6. When Dr. Davis decided not to contribute, Mr. Landers was pressured to make a contribution. As the trial court explained, "If it was contemplated that [Mr. Landers] had to come up with the money, it must have been contemplated that [Mr. Mills] would have to come up with the money."
7. Giving credence to the consistent testimony of Mr. Parigin, Ms. Wheatley, and Ms. Robinson, the trial court determined that Mr. Mills did agree to make a monetary contribution of $180,000 plus business equipment in exchange for a membership interest.
8. Mr. Parigin and Ms. Wheatley made a monetary contribution.
9. Mr. Mills made no monetary contribution.

The trial court then stated its legal conclusion: "Now, the legal effect of that, I presume is . . . that the members who have contributed are Ms. Wheatley and Mr. Parigin." The trial court entered its order on January 24, 2012, nunc pro tunc to January 19, 2012, incorporating by reference the transcript of its ruling from the bench for its findings of fact and conclusions of law. The final order specifically determined the parties' membership interests in The Zone as follows:

1. Plaintiff, Kenneth A. Parigin—81.3%
2. Plaintiff, Kimberly A. Wheatley—18.7%
3. Defendant, M. Shane Mills—0%

On May 14, 2013, Mr. Mills filed a motion to revise and/or set aside a non-final order, arguing primarily that the trial court did not make sufficient findings of fact and conclusions of law pursuant to Tenn. R. Civ. P. 52.01 and that it erred by failing to apply the Tennessee Revised Limited Liability Company Act to the facts of the case.[4] The motion was not heard until February 23, 2015, and a subsequent hearing on the same motion was held on December 16, 2015. On January 5, 2016, the trial court denied the motion, and it certified the order of January 19, 2012 as a final order. On February 4, 2016, Mr. Mills filed a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment, asserting the same arguments contained in his motion to revise and/or set aside a non-final judgment. On February 26, 2016, the trial court entered an order denying that motion, and Mr. Mills filed a notice of appeal on March 28, 2016.

## ANALYSIS

Mr. Mills identified four issues in his brief.[5] We have concluded that they can be consolidated into one issue, that being whether the trial court erred in ruling that Mr.

---

[4] The case was tried before Chancellor Daryl R. Fansler and he made the aforementioned findings of fact, conclusions of law, and judgment. Chancellor Fansler's term expired on August 31, 2014. Chancellor Clarence E. Pridemore, Jr., who took office on September 1, 2014, presided over the case from that point forward.

[5] In his brief, Mr. Mills stated the issues as follows:

I. Whether the trial court made sufficient findings of fact and conclusions of law that were a product of its independent judgment, and directed the entry of an appropriate judgment which contained appropriate insight into its reasoning, all as required by Tenn. R. Civ. [P.] 52.01?

II. Whether the trial court erred in ruling that Mr. Mills (who in fact was a founder) was not a member of The Zone, LLC and owned 0% percent of its membership interests?

III. Whether the trial court erred in ruling that Plaintiff Parigin (whose… membership arose over five months post formation) owned 81.3% percent of its

(continued…)

- 6 -

Mills was not a member of The Zone, and specifically, that he owned a zero percent interest. As a preliminary matter, however, we will address the issue raised by Mr. Parigin and Ms. Wheatley—whether the Court of Appeals lacks subject matter jurisdiction to hear Mr. Mills's appeal because he failed to timely file a notice of appeal in the trial court.

## I. TIMELINESS OF THE NOTICE OF APPEAL

Mr. Parigin and Ms. Wheatley argue that Mr. Mills's motion to alter or amend the judgment was not, in substance, a true Rule 59.04 motion because it merely sought to re-litigate issues upon which the trial court had previously ruled. In other words, Mr. Mills's motion to alter or amend the judgment was actually a motion to reconsider. Thus, Mr. Mills should not be able to rely on his Rule 59.04 motion to toll the time permitted to file an appeal. We disagree.

Tenn. R. App. P. 4(a) requires an appellant to file a notice of appeal within 30 days following the entry of the final judgment. According to Tenn. R. Civ. P. 59.01, the filing of the following post-judgment motions will extend the 30-day deadline: (1) a Tenn. R. Civ. P. 50.02 motion for judgment in accordance with a motion for directed verdict; (2) a Tenn. R. Civ. P. 52.02 motion to amend or make additional findings of fact; (3) a Tenn. R. Civ. P. 59.02 motion for a new trial; and (4) a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment. When determining whether a post-judgment motion will extend the deadline for appeal, a court must look to the substance of the motion rather than to the motion's title. *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998). If the motion fails to fit the criteria of one of the aforementioned post-judgment motions, the appellant cannot rely on it to toll the time for filing an appeal. *Id.*

---

membership interests and was a member of The Zone, LLC at all if there were no members in existence at the time he acquired his interest?

IV.     Whether the trial court erred in ruling that Plaintiff Wheatley (whose… membership arose eight months post formation) owned 18.7% percent of its membership interests and was a member of The Zone, LLC at all?

As to Mr. Mills's first issue, this Court finds that the trial court made sufficient findings of fact and conclusions of law pursuant to Tenn. R. Civ. 52.01. "While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting *Lovlace v. Copely*, 418 S.W.3d 1, 35 (Tenn. 2013)). Here, the trial court's findings of fact and conclusions of law are sufficient to disclose to this Court the steps the trial court took to reach its decision.

Tenn. R. Civ. P. 59.04 allows litigants "a limited opportunity to readdress previously determined issues and afford[s] trial courts an opportunity to revisit and reverse their own decisions." *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000). Although not contained within the rule itself, our courts have held that a litigant may base a Tenn. R. Civ. P. 59.04 motion to alter or amend on one of four basic grounds: (1) a manifest error of law; (2) newly discovered evidence; (3) an intervening change in law; and (4) other manifest injustice. *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001). However, a Tenn. R. Civ. P. 59.04 motion should not seek "to relitigate matters that have already been adjudicated." *Id.* (quoting *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)). This means that a litigant cannot use a motion to alter or amend to raise new, previously untried legal theories or to introduce new evidence that could have been presented while the judgment was pending. *Bradley*, 984 S.W.2d at 933.[6]

In Mr. Mills's motion to alter or amend, he argues in part that the trial court's order of January 24, 2012, should not have been made final pursuant to Tenn. R. Civ. P. 54.02, because it did not comply with Tenn. R. Civ. P. 52.01 in that it failed to make sufficient findings of fact and conclusions of law. He further argues that the final judgment contained manifest errors of law, because the trial court did not apply the Tennessee Revised Limited Liability Company Act to the facts of the case. As Mr. Parigin and Ms. Wheatley correctly contend, Mr. Mills made virtually identical arguments in his previous motion to revise and/or set aside a non-final order. After a hearing, the trial court denied the motion and made an additional and new ruling by certifying the judgment as a final judgment pursuant to Tenn. R. Civ. P. 54.02. Mr. Mills challenged the propriety of making the order a final judgment by filing a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment. Thus, Mr. Mills did not seek to re-litigate matters previously adjudicated because, in his subsequent motion to alter or amend the judgment, he asserted that the designation of the order as a final judgment constituted a manifest error of law, which is the purpose of a Rule 59.04 motion. Thus, Mr. Mills's last Rule 59.04 motion extended the time for filing an appeal, and the notice of appeal he filed was timely. Accordingly, we have subject matter jurisdiction.

---

[6] Mr. Parigin and Ms. Wheatley rely heavily on *Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *6 (Tenn. Ct. App. Feb. 10, 2016) for the notion that a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment should not be used to "relitigate matters that have already been adjudicated." *Goetz* interprets this to mean that a litigant cannot raise issues that he or she had already raised in a previous motion or hearing. *Id. Goetz* cites *Vaccarella*, 49 S.W.3d at 312, and *Vaccarella* cites *Bradley*, 984 S.W.2d at 933. *Goetz*, 2016 WL 537818, at *6. *Bradley* explains that "to relitigate matters that have already been adjudicated" means "to raise new, previously untried legal theories, to present new, previously unasserted legal arguments, or to introduce new evidence that could have been adduced and presented" while the motion was pending. While the Tennessee Supreme Court took issue with the *Bradley* holding in *Harris v. Chern*, 33 S.W.3d at 744, that particular issue is irrelevant to the issue on appeal in this case.

## II. MEMBERSHIP INTERESTS IN THE ZONE

Mr. Mills contends the trial court erred by failing to apply the Tennessee Revised Limited Liability Company Act ("the LLC Act") to the facts of this case and by determining that he had a zero percent interest in The Zone. He argues that, had the trial court applied the LLC Act, the court would have found that he was an original member of The Zone and, consequently, that he possessed a membership interest in the company. We have determined that the evidence preponderates in favor of the trial court's findings of fact. We further find that, upon applying the relevant legal principles to the facts of this case, the trial court did not err in its ruling. Accordingly, we affirm the trial court's determination that Mr. Mills owns a zero percent interest in The Zone.

In this non-jury case, our review is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates against those findings. Tenn. R. App. P. 13 (d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006). We subject the trial court's conclusions of law to a de novo review with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 672 (Tenn. 2006).

The LLC Act provides a roadmap for the formation, financing, operation, and dissolution of an LLC. *See* Tenn. Code Ann. §§ 48-249-101 to -1133. Any individual or entity can form an LLC by filing the articles of organization with the secretary of state, as long as those articles meet the requirements set forth in Tenn. Code Ann. § 48-249-202. An LLC must have at least one member. Tenn. Code Ann. § 48-249-501(c). The "filing of the articles with the secretary of state is conclusive proof that the organizers satisfied all conditions precedent to formation as of the date of filing. . . ." Tenn. Code Ann. § 48-249-201(b). Though not required, the LLC Act contemplates that the members of the LLC will create an oral or written operating agreement to manage the company's affairs. Tenn. Code Ann. § 48-249-203(a). The LLC Act refers to the articles of organization and the operating agreement as the "LLC documents." Tenn. Code Ann. § 48-249-102(16). To the extent the LLC documents are silent, the LLC Act provides default provisions which govern the relationships between members and holders of financial rights. Tenn. Code Ann. § 48-249-205(a).

The problem we face in this appeal, which is the same problem the trial court faced, is that Mr. Mills, Mr. Landers, and the other interested parties failed to follow the user-friendly roadmap set forth in the LLC Act. While Mr. Mills and Mr. Landers got off to a good start by retaining an attorney, Mr. Foster, to prepare and to file the articles of organization with the secretary of state, they immediately left the paved roadway and never got back on track.

When Mr. Foster filed the Articles, he believed Mr. Mills and Mr. Landers were the original members. Mr. Mills, however, insists that Mr. Landers was never a member, and Mr. Parigin and Ms. Wheatley insist that Mr. Mills was never a member. Ironically,

the basis for their respective contentions is the failure of Mr. Landers and Mr. Mills to make the required financial contribution.

Adding to the confusion, Mr. Mills contends The Zone was properly formed when Mr. Foster filed the Articles with the secretary of state; therefore, because a properly formed LLC must have at least one member, then he—Mr. Mills—must have been the original member. This contention is based in part on the fact that Mr. Landers concedes he is not a member.

The prevailing and unorthodox fact of this case is that several and different sets of prospective members believed, at one time or another, that they were members of the LLC. At the inception of the LLC, Mr. Mills believed he was the only member. Later on, Mr. Mills and Mr. Parigin believed they were the only members, and they also agreed to give Dr. Davis an option to become a member if he made the requisite financial contribution. When Dr. Davis did not exercise his option, Mr. Mills renewed his search for other prospective members but to no avail. Finally, Mr. Parigin and Ms. Wheatley believed they were the only two members because they had made the requisite financial contributions while Mr. Mills had made no financial contribution. In each case the prospective "members de jour" endeavored but failed to enter into an operating agreement that identified their membership interests.

Although the LLC Act provides some defaults that govern the relationship between the members when the required documentation is not completed, those defaults presume that, at the very least, the members of the LLC have been identified. Not surprisingly, the LLC Act does not contemplate a situation where at inception the entity is an LLC in form, but the identities of the members are unknown and/or disputed.

Since the parties did not follow the roadmap set forth in the LLC Act, it is impractical, indeed impossible, for this court to endeavor to apply the statutory roadmap to the facts of this case. The trial court came to the same conclusion. Nevertheless, all is not lost because we can follow the evidentiary crumbs the parties left along their way. As was the case with Alice in Wonderland, the evidence reveals that the parties wanted to go "*somewhere*," and as the Cheshire Cat explained, if you want to go somewhere, "you're sure to do that, if only you walk long enough."[7]

Mr. Mills contends the trial court erred by holding that The Zone had no members at the time of formation yet treating it as a properly formed LLC upon the filing of the Articles with the secretary of state. Tenn. Code Ann. § 48-249-201(b) states that the filing of the articles of organization *conclusively* confers de jure status on an LLC. *See* Tenn. Code Ann. § 48-249-201(b) ("[F]iling of the articles with the secretary of state is

---

[7] Lewis Carroll, Alice's Adventures in Wonderland 89-90 (Volume One Publishing 1998).

conclusive proof that the organizers satisfied all conditions precedent to formation as of the date of filing. . . .”). Therefore, The Zone satisfied all conditions precedent to formation when Mr. Foster filed the articles of organization with the secretary of state. Notwithstanding the fact that Tenn. Code Ann. § 48-249-501(c) states that an LLC must have at least one member for proper formation, because the “organizer(s)” satisfied the statutory requirement for formation of an LLC, The Zone was a de jure LLC at that time.

The trial court then reviewed the record to determine the requirements for membership, as agreed upon by the parties. Mr. Landers, Ms. Wheatley, Ms. Robinson, and Mr. Parigin all testified that membership in The Zone was contingent upon a monetary contribution. With regard to Mr. Mills’s membership, they all testified that Mr. Mills agreed to contribute $217,500 in cash, or $180,000 plus business equipment, to become a member. Conversely, Mr. Mills argued that his contribution was limited to his ideas, efforts, and services, while everyone else’s contribution was to be monetary.

The trial court found that Mr. Mills was required to contribute $180,000 plus business equipment to become a member and that Mr. Mills contributed neither. In making this finding, the trial court noted that Mr. Landers also contributed ideas, efforts, and services, but he walked away with no membership interest, because he could not make the required monetary contribution. The trial court found this fact significant because, as the court concluded, Mr. Landers’s voluntary departure from the company could only be explained by (1) the existence of an agreement between Mr. Landers and Mr. Mills that membership in the Zone hinged on a monetary contribution, and (2) Mr. Landers’s reasonable belief that Mr. Mills intended to make the agreed upon monetary contribution.

For the foregoing reasons, we affirm the trial court’s declaration that Mr. Parigin and Ms. Wheatley are members of the LLC, the declaration of their respective membership interests, and the declaration that Mr. Mills is not a member of the LLC.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against M. Shane Mills.

_____
FRANK G. CLEMENT, JR., P.J., M.S.