IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 15, 2020 Session

**JEFFERSON COUNTY, TENNESSEE V.
WILMOTH FAMILY PROPERTIES, LLC, ET AL.**

**Appeal from the Chancery Court for Jefferson County
No. 17-CV-51        Robert E. Lee Davies, Senior Judge[1]**

———————————————————

**No. E2019-02283-COA-R3-CV**

———————————————————

This action concerns the trial court's dismissal of a complaint for injunctive relief in which Jefferson County sought to enforce its zoning ordinance as applied to a commercial wedding event venue operated in a rural residential area. We affirm the trial court's holding that the activities are immune from the County's authority to enforce its zoning powers by virtue of the agricultural use of the property.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG, J., joined. THOMAS R. FRIERSON, II, J., not participating.

F. Clinton Little and Eric B. Foust, Knoxville, Tennessee, for the appellant, Jefferson County, Tennessee.

Benjamin C. Mullins, Knoxville, Tennessee, for the appellees, Wilmoth Family Properties, LLC, Cedar Pond Farms, Shawn and Priscilla Wilmoth.

**OPINION**

**I.        BACKGROUND**

In 2004, Shawn and Priscilla Wilmoth (collectively "the Wilmoths") purchased the property at issue in Jefferson County ("the County"), believing it to be zoned agricultural, for use as a residence and a farm. The property consists of two tracts, a main tract with 28.5 acres and a much smaller tract across the road with 1.5 acres. The

———————————————————

[1]Sitting by Tennessee Supreme Court designation.

property was formally used as a dairy farm and as a slaughterhouse. When the Wilmoths bought the property, they repaired some existing buildings and built their own residence and other structures, including a pavilion and a barn for rental use by third parties for events or overnight stays.

The Wilmoths purchased the property with the intent of operating a farm. They immediately applied for and received Greenbelt protection and initially used the property for hay production and to raise chickens for egg production. The Wilmoths later discovered that the property was zoned R-1 or rural residential. In 2010, Mr. Wilmoth applied to the County Zoning Commission to have the property rezoned as agricultural. His request was denied. Despite the denial, the Wilmoths began renting the farm as an event venue in 2011, operating under the registered name of Cedar Pond Farms.

The surrounding neighbors began to complain about the activities on the farm, namely the increased traffic and noise from the events. In 2016, the County sent notice to the Wilmoths to stop the use of the property as an event venue, claiming that such commercial events, specifically weddings, were prohibited by the R-1 zoning regulation. The Wilmoths did not cease their use of the property as an event venue.

On May 5, 2017, the County filed a complaint against the Wilmoths and their company, Wilmoth Family Properties, LLC, and the venue, Cedar Pond Farms. The County sought a restraining order and an injunction, alleging that the present use of the property was in violation of the applicable zoning regulations. The parties have at all times agreed that the rental of the property as an event venue violates the R-1 Zoning Ordinance at issue in this action. The question has always been whether these activities are immune from the County's authority to enforce its zoning powers by virtue of the agricultural use of the property pursuant to Tennessee Code Annotated section 5-1-118(b),[2] which provides protection from the enforcement of zoning regulations when "normal agricultural activities" are present on the property.[3]

The County filed a motion for summary judgment, in which it sought to enforce the zoning ordinances with regard to the non-conforming use of the property. The County claimed that the Wilmoths were "attempting to circumvent [the County's] zoning regulations by maintaining a token amount of agricultural activities and/or farm operations which [had] no connection whatsoever to the commercial event venue use." The County asserted that the current use of the property could not be defined as an agricultural use, thereby removing any protection afforded by statute.

---

[2] "Nothing in this part shall be construed as granting counties the power to prohibit or regulate normal agricultural activities."

[3] The Wilmoths also raised a freedom of worship challenge not at issue in this appeal.

- 2 -

The Wilmoths likewise moved for summary judgment, claiming that Cedar Pond Farms met the statutory definition of a farming operation and was afforded protection from the suggested zoning regulations pursuant to the definition of agriculture, found at Tennessee Code Annotated §§ 1-3-105 and 43-1-113, and defined as follows:

> A. The land, buildings, and machinery used in the commercial production of farm products and nursery stock;
>
> B. The activity carried on in connection with the commercial production of farm products and nursery stock;
>
> C. Recreational and educational activities on land used for the commercial production of farm products and nursery stock;
>
> D. Entertainment activities *conducted in conjunction with, but secondary to,* commercial production of farm products and nursery stock, when such activities occur on land used for the commercial production of farm products and nursery stock.
>
> As used in this definition of agriculture, the terms "farm products" means forage and sod crops; grains and feed crops; dairy and dairy products; poultry and poultry livestock, including breeding and grazing; fruits; vegetables; flowers; seeds; grasses; forestry products; fish and other aquatic animals used for food, feed, fiber or fur . . .

(Emphasis added.).

The trial court denied the competing motions for summary judgment, finding that a question of fact remained concerning whether Cedar Pond Farms was used for the commercial production of farm products or nursery stock. The court then directed the parties as follows:

> 1. If Cedar Pond Farms is an active farm being used for the commercial production of farm products or nursery stock, then are the events being held there such as weddings, political fundraisers, etc. "recreational" as defined in the above statute?
>
> 2. If weddings and other events are not "recreational", are weddings "entertainment" as defined in the above statute?
>
> 3. If weddings and other events are considered to be "entertainment", then are they being conducted in conjunction with, but secondary to, commercial production of farm products or nursery stock?

The case proceeded to a hearing, at which Mr. Wilmoth testified in depth concerning the farming operation in comparison to his use of the property as an event venue. Mr. Wilmoth testified that they offer the property and related equipment for the events but that neither he nor anyone in his family is present for or has a part in conducting the actual events. He claimed that his time is spent tending to the farm and his various entrepreneurial interests unrelated to this action.

Following the hearing, the court found that "the use of Cedar Pond Farms as a wedding venue and other events such as political rallies and birthdays does not fall within an ordinary meaning of a recreational or educational activity." The court then offered an in-depth analysis concerning whether the property was exempt from the zoning regulations by virtue of its entertainment activities conducted in conjunction with, but secondary to the farming operation. The court then held as follows:

> The Wilmoths are in fact operating a farm; that they produce crops for horses and cattle, that they have livestock for breeding and grazing; and that they produce and sell poultry products. From a time and effort perspective, wedding events are clearly secondary to the amount of work which the Wilmoths put into working their farm. It is true they make more rental income from wedding events, but the Court finds this is not determinative. As long as the present amount of effort by the Wilmoths continues to be dedicated to the production of farm products and nursery stock, they and Cedar Pond Farms fall within the definition of agriculture set forth in [Sections] 43-1-113 and 1-3-105.

This timely appeal followed the dismissal of the complaint for injunctive relief.

## II. ISSUES

This case presents the following dispositive issues concerning this court's review of the trial court's dismissal of the complaint for injunctive relief:

A. Whether the trial court erred in finding that the Wilmoths are commercially producing farm products and nursery stock within the meaning of Tennessee Code Annotated § 1-3-105(2)(A) and Tennessee Code Annotated § 43-1-113(b).

B. Whether the trial court erred in finding that the Wilmoths' use of their property as a commercial venue qualified as "entertainment activities conducted in conjunction with, but secondary to, commercial production of farm products and nursery stock" within the meaning of Tennessee Code

- 4 -

Annotated § 1-3-105(2)(A) and Tennessee Code Annotated § 43-1-113(b).

C.      Whether farm weddings are best classified as a "recreational" activity within the meaning of Tennessee Code Annotated § 1-3-105(2)(A) and Tennessee Code Annotated § 43-1-113(b).

## III.      STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  We review questions of law de novo with no presumption of correctness.  *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).  To the extent that the issues raised in this appeal require us to interpret and apply statutes, we note that statutory interpretation is a question of law, which we review de novo, affording no presumption of correctness to the conclusions of the trial court. *State v. Crank*, 468 S.W.3d 15, 21 (Tenn. 2015); *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014); *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013) (citing *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009)).

The principles of statutory interpretation are well established.  When reading "statutory language that is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).  "[W]e presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing." *SunTrust Bank v. Burke*, 491 S.W.3d 693, 695 (Tenn. Ct. App. 2015) (quoting *Lind v. Beaman Dodge*, 356 S.W.3d 889, 895 (Tenn. 2011)).  "When a statute is clear, we apply the plain meaning without complicating the task." *In re Baby*, 447 S.W.3d at 817. However, when a statute is ambiguous, "we may reference the broader statutory scheme, the history of the legislation, or other sources." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

## IV.      ANALYSIS

### A.

The County asserts that the actual farming activities present in this case do not rise to the threshold level of commercial production contemplated by the legislature in the statutory definition of agriculture, thereby removing any agricultural protection from the applicable zoning statutes.  The Wilmoths respond that there is no minimal production

threshold for a farm to qualify as having a "commercial production." The court found, and the record confirms, as follows concerning the agricultural use of the property:

1.      The Wilmoths have sold or bartered hay produced by their farm.

2.      Using grant money, the Wilmoths installed fencing and put in watering systems for their fescue and cattle.

3.      The Wilmoths have sold cattle for profit and presently have nine cows and a bull on the farm.

4.      The Wilmoths have consistently had [18] to [22] chickens which they have used for egg production. Presently, these eggs[4] are being sold to their LLC which operates eateries in Jefferson County and Knoxville.

We, like the trial court, hold that these facts establish that Cedar Pond Farms is engaged in the commercial production of farm products and nursery stock within the meaning of the applicable statutes.


## B. & C.

As a threshold issue, the County argues that the trial court erred in applying the Tennessee Right to Farm Act, codified at Tennessee Code Annotated § 43-26-101, *et seq.*, in determining that the activities were permitted. "The Tennessee Right to Farm Act protects farms and farm operations from nuisance claims by creating a rebuttable presumption that they are not nuisances." *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 418 (Tenn. 2013). Here, the County sought to enjoin the commercial activity as a violation of the applicable zoning regulations, not to abate a nuisance. The trial court referenced the Right to Farm Act but ultimately confined its analysis to whether the activity at issue was immune from the County's authority to enforce its zoning powers by virtue of the agricultural use of the property.

We turn now to whether the use of the property as a commercial event venue qualifies as "agriculture" within the meaning of the statutes. At trial and now on appeal, the Wilmoths argue that the weddings qualified as (1) a recreational activity and/or as (2) an entertainment activity conducted in conjunction with, but secondary to the commercial production of farm products and nursery stock as permitted by the statutes.

The trial court held that the use of Cedar Pond Farms as a wedding and event venue does not fall within an ordinary meaning of a recreational or educational activity as

---

[4] In excess of 400 to 600 eggs per month.

interpreted by our Supreme Court. *See Shore*, 411 S.W.3d at 430 (holding that amplified music concerns did not fall within the "rubric" of agriculture as currently defined by the legislature). In *Shore*, the Supreme Court first found as follows:

> [W]e have found nothing that suggests the General Assembly considered noise from amplified music concerts held on a farm to necessarily have a connection with producing farm products. Nor have we found any basis to conclude that the General Assembly considered music concerts to be some sort of farm operation. The plain language of the Tennessee Right to Farm Act reflects a close connection between producing farm products and the conditions or activities shielded by the Act. Accordingly, we decline to give the same broad interpretation to the Tennessee Right to Farm Act that was given by the courts below.

*Id.* at 423-24. The Court then considered whether the activities at Maple Lane Farms qualified as agriculture within the meaning of Section 43-1-113(b)(1)(C) and related statutes. The court noted that not all activities that qualify as agritourism activities for purposes of liability limitations will qualify as agriculture for the purpose of exemption from zoning limitations. *Id.* at 429. The court held that the activities at issue, amplified music concerts, were more properly characterized as entertainment, a category not yet included in the definition of agriculture. *Id.* at 429-430.

The Wilmoths ask this court to categorize the offending events as recreational within the meaning of the statute, thereby permitting the use of the property as a wedding venue without the limiting provision now applicable to entertainment activities. The Wilmoths argue that weddings are an active recreational activity within the definition of agriculture when held on land used for the commercial production of farm products and nursery stock. *See Shore*, 411 S.W.3d at 428 (suggesting that active, rather than passive activities are more properly characterized as recreational). We agree that weddings have an active component in that the attendees witness the covenant formed between the fiancé/fiancée and then, in most cases, partake in a celebration of the union in which eating, drinking, and dancing are most commonly offered by the hosts. However, we disagree that such active recreational activities qualify as a "normal agricultural activity," exempting the property from applicable zoning regulations pursuant to Section 5-1-118. Normal is defined as "conforming to a type, standard, or regular pattern[,] characterized by that which is considered usual, typical, or routine." Merriam-Webster Online Dictionary (2021) (www.merriamwebster.com (derived from Merriam-Webster's Collegiate Dictionary 11th ed.)). Such normal agricultural activities have previously been limited to, inter alia, pumpkin patches, corn mazes, and hay rides, and have not included 300-person wedding celebrations and other similar amplified events. *See generally Shore*, 411 S.W.3d at 429 (providing that all activities held on a farm do not qualify as agricultural). We affirm the trial court on this issue.

In response to the Supreme Court's decision in *Shore*, the legislature amended the definition of agriculture to include the following provision:

Entertainment activities *conducted in conjunction with, but secondary to,* commercial production of farm products and nursery stock, when such activities occur on land used for the commercial production of farm products and nursery stock.

Tenn. Code Ann. § 43-1-113(b)(1)(D) (emphasis added). The trial court found that as long as the present amount of effort expended by the Wilmoths continues to be dedicated to the production of farm products and nursery stock, they and Cedar Pond Farms fall within the entertainment definition of agriculture.

The entertainment at issue, farm weddings, is necessarily conducted in conjunction with the production and operation of the farm. Mr. Wilmoth testified that the event venue is successful due to the aesthetic appearance of the farm and the farming operation itself, noting that the venue provides multiple photographic opportunities of general life on the farm. The record reflects that in 2019, the farming income amounted to approximately $6,250, while the farm rental income amounted to approximately $47,247, including $28,375 in rental income for weddings and other events on the property. Mr. Wilmoth testified in-depth concerning his time spent operating the farm in comparison to the minimal time he spent facilitating his event venue business, which housed five weddings in 2019. We, like the trial court, believe that the present use of the property is in keeping with the legislature's obvious intent to allow the necessary supplementation of farming income with income from related activities as long as such activities are secondary to the commercial production of farm products and nursery stock. Accordingly, we affirm the trial court's dismissal of the complaint for injunctive relief based upon our interpretation of [Section] 43-1-113(b)(1)(D) and related statutes.

## V. CONCLUSION

We affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to appellant, Jefferson County, Tennessee.

_____
JOHN W. MCCLARTY, JUDGE